## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

BENJAMIN WATSON, JR.; SHEILA
WILEMON WATSON; SHANE
WALTERS; AMANDA WALTERS;
DUSTIN WALTERS; MASON
WALTERS; SAMEH HAITHAM;
EVELYN BRADY; SHADIN
HAITHAM; JOHN ROBERT BRADY;
IRVIN LAWRENCE JR.; GEORGE
JOHNSON; BREANNA THOMAS;
RYAN BLACKWELL; CARLY
BLACKWELL; KRISTY LEHMER;
JESSICA PICKETT; CURTIS PICKETT;
CHARLES HOGUE; MATTHEW
TINCH; JESSICA TINCH; JONATHAN
GLASS; JOY GLASS; MATTHEW
HOUSAM; MICHAEL HOYLAND;
THOMAS C. BORTNER; GRANT
LOPEZ; HEATHER LOPEZ;
MATTHEW KEEBLER; and
KRYSTENA KEEBLER,

*Plaintiffs*,

v.

KINGDOM OF SAUDI ARABIA,

*Defendant.*

Case No. 3:21-cv-329

## THE KINGDOM OF SAUDI ARABIA'S RESPONSE TO
## PLAINTIFFS' RULE 72 OBJECTIONS

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 2

STANDARD OF REVIEW ................................................................................. 3

ARGUMENT ...................................................................................................... 3

I.    The Report Applies The Correct Standards For Establishing An
      Exception To Foreign Sovereign Immunity ............................................. 3

II.   Plaintiffs Failed To Establish Any Exception To Foreign
      Sovereign Immunity ................................................................................. 7

      A.    Plaintiffs Failed To Establish That JASTA's Exception
            Applies ............................................................................................. 8

            1.    The Attack Was Not Within Al Shamrani's Scope
                  Of Employment Or Agency ..................................................... 8

            2.    JASTA's Exception Does Not Apply To Saudi
                  Arabia's Alleged Failures Of Vetting, Retention,
                  And Supervision ..................................................................... 13

            3.    Plaintiffs' Allegations That Saudi Arabia Provided
                  Material Support Are Deficient .............................................. 19

      B.    Plaintiffs Failed To Establish That The Noncommercial-
            Torts Exception Applies .................................................................. 23

            1.    The "Entire Tort" Rule Bars Consideration Of
                  Acts Or Omissions Occurring Outside The United
                  States ..................................................................................... 24

            2.    Saudi Arabia's Hiring, Retention, And Supervision
                  Of Al Shamrani Were Discretionary Functions ..................... 25

      C.    Plaintiffs Failed To Establish That The Commercial-
            Activity Exception Applies .............................................................. 27

       1.    There Was No Relevant "Commercial Activity" ....................27

       2.    Plaintiffs' Suit Is Not "Based Upon" Military
            Training .................................................................................29

   D.   Plaintiffs Failed To Establish A Waiver Of Foreign
       Sovereign Immunity ......................................................................30

III.   Denial Of Jurisdictional Discovery Was Not Clearly Erroneous
     Or Contrary To Law .............................................................................31

CONCLUSION ..................................................................................................34

LOCAL RULE 7.1(F) CERTIFICATION

LOCAL RULE 5.1(F) CERTIFICATION

# TABLE OF AUTHORITIES

Page

CASES

*3M Combat Arms Earplug Prods. Liab. Litig.*, *In re*, 2022 WL 2436843
   (N.D. Fla. Mar. 11, 2022) ................................................................. 13

*Arch Trading Corp. v. Republic of Ecuador*:

   2015 WL 3443906 (S.D.N.Y. May 28, 2015), *aff'd*,
   839 F.3d 193 (2d Cir. 2016) ............................................................... 5

   839 F.3d 193 (2d Cir. 2016) ..................................................... 5, 31, 32, 33

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................. 18

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling
   Co.*, 581 U.S. 170 (2017) ................................................................. 34

*Bridges v. Speer*, 79 So. 2d 679 (Fla. 1955) ............................................ 17

*Burke v. R.B. Baker Constr., Inc.*, 2005 WL 2077308 (M.D. Fla.
   Aug. 29, 2005) ................................................................................ 9

*Burrage v. United States*, 571 U.S. 204 (2014) ....................................... 22

*Butler v. Sukhoi Co.*, 579 F.3d 1307 (11th Cir. 2009) .......................... 4, 5, 31, 32

*CFTC v. Southern Tr. Metals, Inc.*, 894 F.3d 1313 (11th Cir. 2018) .............. 22, 23

*City of Green Cove Springs v. Donaldson*, 348 F.2d 197 (5th Cir. 1965) ............ 9

*Crenshaw v. Lister*, 556 F.3d 1283 (11th Cir. 2009) ................................. 27

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) ...................................... 4

*Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213
   (11th Cir. 2018) ......................................................................... 4, 5, 32

*Dudley v. Community Pub. Serv. Co.*, 108 F.2d 119 (5th Cir. 1939) ................ 15

*Foster Logging, Inc. v. United States*, 973 F.3d 1152 (11th Cir. 2020) ............ 26

*Franklin v. Curry*, 738 F.3d 1246 (11th Cir. 2013) ................................... 17

*Hansen v. PT Bank Negara Indonesia (Persero), TBK*, 601 F.3d 1059
(10th Cir. 2010) ............................................................................................32

*Hardy v. Jones*, 2016 WL 5110486 (N.D. Fla. Sept. 20, 2016) ..............................18

*Hennagan v. Department of Highway Safety & Motor Vehicles*,
467 So. 2d 748 (Fla. Dist. Ct. App. 1985)....................................................10

*Holland v. Cardem Ins. Co.*, 2020 WL 9439381 (D.D.C. June 22,
2020) ..............................................................................................................3

*Ible v. Wells Fargo Bank, N.A.*, 2022 WL 3644031 (11th Cir. Aug. 24,
2022) ............................................................................................................26

*Iglesia Cristiana La Casa Del Señor, Inc. v. L.M.*, 783 So. 2d 353
(Fla. Dist. Ct. App. 2001) ............................................................................12

*Jam v. International Fin. Corp.*, 139 S. Ct. 759 (2019) ..........................................27

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
513 U.S. 527 (1995)......................................................................................23

*Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021)...............21

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123
(D.C. Cir. 2004)............................................................................................23

*Koch Foods, Inc. v. Secretary, U.S. Dep't of Labor*, 712 F.3d 476
(11th Cir. 2013) .................................................................................... 14-15

*Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990) ...........................................34

*Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018).........................................21

*Lockhart v. United States*, 577 U.S. 347 (2016)....................................................14

*Luke v. Gulley*, 975 F.3d 1140 (11th Cir. 2020) ...............................................7, 30

*Mamani v. Berzain*, 654 F.3d 1148 (11th Cir. 2011)........................................17, 18

*McCain v. Florida Power Corp.*, 593 So. 2d 500 (Fla. 1992)................................21

*MCI Telecomms. Corp. v. Alhadhood*, 82 F.3d 658 (5th Cir. 1996) ................27, 28

*McMillan v. Department of Corr.*, 2016 WL 4059230 (July 8, 2016), *report & recommendation adopted*, 2016 WL 4059679 (N.D. Fla. July 27, 2016) ............................................................................. 10

*Morrison v. Amway Corp.*, 323 F.3d 920 (11th Cir. 2003) .................................... 34

*O'Bryan v. Holy See*, 556 F.3d 361 (6th Cir. 2009) ............................................ 5, 25

*O'Donnell v. United States*, 736 F. App'x 828 (11th Cir. 2018) ........................... 21

*OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015) .................................. 29, 30

*Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555 (2d Cir. 2020) ................................. 5

*Parsons v. Weinstein Enters., Inc.*, 387 So. 2d 1044 (Fla. Dist. Ct. App. 1980) ............................................................................................................ 10

*Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36 (D.C. Cir. 2000) ...................................................................................................... 32

*Republic of Argentina v. Weltover*, 504 U.S. 607 (1992) .................................. 27, 28

*Robinson v. Government of Malaysia*, 269 F.3d 133 (2d Cir. 2001) ........................ 5

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) .................................................. 21

*Ruan v. United States*, 142 S. Ct. 2370 (2022) ........................................................ 4

*Rux v. Republic of Sudan*, 461 F.3d 461 (4th Cir. 2006) ....................................... 23

*Samco Glob. Arms, Inc. v. Arita*, 395 F.3d 1212 (11th Cir. 2005) ......................... 28

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) ........................................................ 28

*Sequeira v. Republic of Nicaragua*, 815 F. App'x 345 (11th Cir. 2020) ................ 32

*Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345 (S.D. Fla. 2003) ................... 5

*Spencer v. Assurance Co. of Am.*, 39 F.3d 1146 (11th Cir. 1994) ................. 8, 11, 12

*Sussman v. Florida E. Coast Props., Inc.*, 557 So. 2d 74 (Fla. Dist. Ct. App. 1990) ............................................................................................................ 11

*Tampa Maid Seafood Prods. v. Porter*, 415 So. 2d 883 (Fla. Dist. Ct. App. 1982) ............................................................................................................ 11

*Terrorist Attacks on September 11, 2001*, *In re*:

    714 F.3d 109 (2d Cir. 2013) ..........................................................24

    298 F. Supp. 3d 631 (S.D.N.Y. 2018) ....................................21, 23

    2023 WL 1797629 (S.D.N.Y. Feb. 7, 2023) ..................................7

*Trotter v. Board of Trustees of Univ. of Alabama*, 91 F.3d 1449
    (11th Cir. 1996) ...........................................................................4

*Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206 (2023) ............................15, 16

*UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210
    (5th Cir. 2009) ...........................................................................28

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983) ..........34

*Watts v. City of Hollywood*, 146 F. Supp. 3d 1254 (S.D. Fla. 2015)......10

*Watts v. City of Port St. Lucie*, 2016 WL 1110316 (S.D. Fla. Mar. 22,
    2016) ..........................................................................................10

*Williams v. McNeil*, 557 F.3d 1287 (11th Cir. 2009) ......................13, 19

STATUTES AND RULES

Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583,
    90 Stat. 2891 (codified as amended at, *inter alia*, 28 U.S.C.
    §§ 1602-1611)...........................................................................3, 5

    28 U.S.C. § 1603(d) .....................................................................27

    28 U.S.C. § 1605(a)(1)...............................................................7, 30

    28 U.S.C. § 1605(a)(2)...........................................................7, 27, 29

    28 U.S.C. § 1605(a)(5)...........................................................7, 23, 24

    28 U.S.C. § 1605(a)(5)(A)..........................................................26

Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222,
130 Stat. 852 (2016) ..........................................................7, 8, 13, 14, 15,
16, 18, 19, 20, 23, 24

§ 2(b), 130 Stat. 853..........................................................15

28 U.S.C. § 1605B ..........................................................7

28 U.S.C. § 1605B(b) ..........................................................18, 20, 22

28 U.S.C. § 1605B(b)(2)..........................................................8, 20

28 U.S.C. § 1605B(d) ..........................................................13, 14, 24

28 U.S.C. § 636(b)(1)(C) ..........................................................3, 18

Fed. R. Civ. P. 72(a)..........................................................3

Fed. R. Evid. 803(8)(A)(iii) ..........................................................7

ADMINISTRATIVE MATERIALS

Attorney General Barr and FBI Deputy Director Bowdich Hold Press
Conference (Jan. 13, 2020), https://www.youtube.com/
watch?v=sXI5qUsPjEY ..........................................................18, 33

U.S. Dep't of Justice, Attorney General William P. Barr Announces
the Findings of the Criminal Investigation into the December
2019 Shooting at Pensacola Naval Air Station (Jan. 13, 2020) ...............7, 12

U.S. Navy, *Command Investigation Report – Fatal Shooting Incident
at Naval Air Station Pensacola, Florida on 6 December 2019*
(Feb. 21, 2020)..........................................................6

OTHER MATERIALS

*Black's Law Dictionary* (11th ed. 2019)....................................................................4

Restatement (Second) of Agency (1958)................................................................10

12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and
    Procedure* (3d ed. 2014).................................................................................3

# INTRODUCTION

Mohammed Saeed Al Shamrani's terrorist attack at Naval Air Station Pensacola was a rogue act.  The Kingdom of Saudi Arabia ("Saudi Arabia" or "KSA") deplores that attack and expresses its deep condolences to the victims and their families.  The contention that Saudi Arabia bears responsibility for the attack, however, is fundamentally misguided.  Before the attack, Al Shamrani pledged allegiance to Al Qaeda, an enemy of both the United States and Saudi Arabia. An extensive FBI investigation found "no evidence of assistance or pre-knowledge of the attack by other members of the Saudi military."

As Magistrate Judge Bolitho has explained in a thorough and well-reasoned Report and Recommendation ("Report" or "R&R"), there is no legal basis for this Court to exercise subject-matter or personal jurisdiction over Plaintiffs' claims against Saudi Arabia arising from the Pensacola attack.  The Report correctly states and applies the standard that Plaintiffs must meet to establish an exception to foreign sovereign immunity.  That standard requires Plaintiffs to both plead and produce evidence that an exception to foreign sovereign immunity applies. Plaintiffs object at length that they should not have been required to produce admissible evidence.  But that requirement follows from binding Eleventh Circuit precedent and ensures that foreign sovereigns have appropriate protection against civil suits in United States courts, consistent with important principles of

international comity.  In any event, the dispute about Plaintiffs' evidentiary burden does not affect the outcome of this case because, as the Report explains, Plaintiffs also failed even to allege an exception to foreign sovereign immunity.

The Report also properly rejects jurisdictional discovery.  To obtain jurisdictional discovery, Plaintiffs needed to make a *prima facie* showing of an exception to foreign sovereign immunity, which they failed to do.  Even if they had, their jurisdictional discovery requests were clearly deficient.  The eight "buckets" of discovery they proposed were excessively broad.  Those "buckets" would have intruded not only on Saudi Arabia's legitimate interest in immunity from suit (including discovery), but also on areas where confidentiality is vital to its national security, such as its procedures for vetting members of its armed forces for terrorist sympathies.  Plaintiffs do not now defend the reasonableness of any of their discovery "buckets."  Magistrate Judge Bolitho's refusal to allow a "fishing expedition" appropriately heeded Eleventh Circuit guidance.

## BACKGROUND

Plaintiffs do not raise any specific objections to the Report's recitation of Plaintiffs' allegations, the evidentiary record, or the procedural posture of the case.  R&R 2-8.  This Court should adopt those parts of the recommendation in full.  Additional detail regarding Plaintiffs' allegations and the evidentiary record can be found in Saudi Arabia's motion-to-dismiss briefing.  *See* ECF No. 46, at 4-9.

**STANDARD OF REVIEW**

A magistrate judge's recommendation to grant the dispositive motion to dismiss is reviewed de novo.  *See* 28 U.S.C. § 636(b)(1)(C).  Denial of a request for jurisdictional discovery, however, is nondispositive and receives deferential review.  *See* Fed. R. Civ. P. 72(a) (order may be "modif[ied] or set aside" if "clearly erroneous or . . . contrary to law"); *Holland v. Cardem Ins. Co.*, 2020 WL 9439381, at *15 n.7 (D.D.C. June 22, 2020) ("[A] ruling on a request for jurisdictional discovery is non-dispositive."); 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3068.2, at 376 (3d ed. 2014) ("[D]iscovery rulings should ordinarily be viewed as nondispositive.").

**ARGUMENT**

**I.    The Report Applies The Correct Standards For Establishing An Exception To Foreign Sovereign Immunity**

**A.**    Saudi Arabia raised both facial and factual challenges to subject-matter and personal jurisdiction.  R&R 12.  It is undisputed that the Report applies the correct standard to the facial challenge:  whether, "if the allegations are taken as true," Plaintiffs have "allege[d] facts sufficient to fall within a [Foreign Sovereign Immunities Act of 1976 ("FSIA")] exception."  *Id.*

The Report also applies the correct burden-shifting framework to the factual challenge.  Once Saudi Arabia showed it was a foreign state (which was undisputed), the "burden of production" shifted to Plaintiffs to establish an exception to foreign

- 3 -

sovereign immunity.  R&R 10 & n.6.  Plaintiffs' "burden of production" required them to "go[] forward with evidence" – not mere allegations – to establish an exception to foreign sovereign immunity.  R&R 10.  Only if Plaintiffs had met that "burden of production" would the "burden of persuasion" have shifted back to Saudi Arabia.  *Id.*

Plaintiffs incorrectly contend (at 8-10) that they can satisfy their "burden of production" solely with allegations.  The Eleventh Circuit holds that plaintiffs bear "[t]he burden of production to make an initial showing that jurisdiction exists because a FSIA exception applies."  *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1222 n.9 (11th Cir. 2018).  A "burden of production" is "[a] party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder."  *Black's Law Dictionary* 244 (11th ed. 2019); *see Ruan v. United States*, 142 S. Ct. 2370, 2380 (2022) (identifying "the burden of production" as "the burden of going forward with the evidence"); *Trotter v. Board of Trustees of Univ. of Alabama*, 91 F.3d 1449, 1457 (11th Cir. 1996) ("burden of production" satisfied by "produc[ing] admissible evidence"), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

Plaintiffs err in relying (at 10) on *Butler v. Sukhoi Co.*, 579 F.3d 1307 (11th Cir. 2009).  *Butler* confirms that plaintiffs "must overcome the presumption that the foreign state is immune from suit by producing evidence," not just allegations. *Id.* at 1312-13.  Plaintiffs take out of context *Butler*'s statement that courts evaluate

whether the "burden of production" has been satisfied by looking at "'allegations in the complaint and the undisputed facts.'"  *Id.* at 1313 (brackets omitted).  They erroneously contend that Saudi Arabia must present evidence to dispute their allegations, or else those allegations are taken as true.  But if so, that would mean that Saudi Arabia, not Plaintiffs, would bear the burden of production.  That is the opposite of what the Eleventh Circuit said in *Butler* and in *Devengoechea*, and contrary to the law of other Circuits as well.[1]

Plaintiffs' remaining cases are inapposite.  *O'Bryan v. Holy See*, 556 F.3d 361 (6th Cir. 2009), concerned a facial challenge and therefore did not consider the nature of a plaintiff's burden of production.  *See id.* at 375.  The plaintiff in *Pablo Star Ltd. v. Welsh Government*, 961 F.3d 555 (2d Cir. 2020), submitted evidence to carry its burden of production, as Plaintiffs erroneously contend they need not do.  *See id.* at 566.  And *Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345 (S.D. Fla. 2003), did not even involve foreign sovereign immunity.  *See id.* at 1348-50.[2]

---

[1] *See*, *e.g.*, *Robinson v. Government of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001) (on factual challenge, "plaintiff has the burden of going forward with evidence"; only if "plaintiff comes forward with sufficient evidence to carry its burden of production" is it necessary to "resolve disputed issues of fact").

[2] The passage in a Federal Judicial Center publication that Plaintiffs quote (at 9) relies on a misquote of Second Circuit precedent found in *Arch Trading Corp. v. Republic of Ecuador*, 2015 WL 3443906 (S.D.N.Y. May 28, 2015).  On appeal in *Arch Trading*, the Second Circuit made clear that "the plaintiff" in an FSIA case "has the burden of going forward with evidence."  *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 199 (2d Cir. 2016).

**B.**     In any event, Plaintiffs' objection to the burden-shifting framework for factual challenges is academic.  The Report recommends denying each of Plaintiffs' attempts to establish an exception to foreign sovereign immunity for the primary reason that Plaintiffs failed to adequately allege that exception.  *Infra* pp. 8-13 (lack of allegations for scope of employment), 13-15 (allegations based on omissions prohibited by statute), 19-21 (rejecting conclusory allegations of material support), 23-26 (allegations barred by entire-tort rule and discretionary-function exception), 27-30 (military training activity neither commercial nor basis for Plaintiffs' action), 30 (failure to allege waiver).  Accordingly, Plaintiffs' suit does not survive a facial (let alone a factual) challenge.

Alternatively, even if Plaintiffs were correct that they could satisfy their burden of production through allegations, Saudi Arabia carried its burden of persuasion by submitting admissible evidence on dispositive issues, and Plaintiffs failed to rebut that showing with any evidence.  *See* ECF No. 46, at 4-9.  Among other things, the Navy's investigation found Al Shamrani had been "self-radicaliz[ed]," that "path to radicalization was not recognized and interrupted," and "no one person or organization knew or could have known" of his attack.  ECF No. 47-1, at 7 (U.S. Navy, *Command Investigation Report – Fatal Shooting Incident at Naval Air Station Pensacola, Florida on 6 December 2019* (Feb. 21, 2020)).  And the FBI's investigation – to which Saudi Arabia "gave complete and total support"

- 6 -

– found "no evidence of assistance or pre-knowledge of the attack by other members of the Saudi military (or any other foreign nationals) who [we]re training in the United States."[3]  The Navy and FBI investigation results were properly considered and admissible both because Plaintiffs themselves relied on them, *see* Am. Compl. ¶¶ 173 n.33, 320-321, 324, 327, 341-344; *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020), and because they contain "factual findings from . . . legally authorized investigation[s]," Fed. R. Evid. 803(8)(A)(iii).[4]

## II.   Plaintiffs Failed To Establish Any Exception To Foreign Sovereign Immunity

The Report correctly recommends rejecting the four asserted exceptions to foreign sovereign immunity under the Justice Against Sponsors of Terrorism Act ("JASTA"), 28 U.S.C. § 1605B; the noncommercial-torts exception, *id.* § 1605(a)(5); the commercial-activities exception, *id.* § 1605(a)(2); and the waiver exception, *id.* § 1605(a)(1).

---

[3] ECF No. 47-2, at 3 (U.S. Dep't of Justice, Attorney General William P. Barr Announces the Findings of the Criminal Investigation into the December 2019 Shooting at Pensacola Naval Air Station (Jan. 13, 2020) ("January 13, 2020 Investigative Findings")).

[4] Plaintiffs urge (at 11 n.1) "caution" in relying on these findings.  But these were findings reported by the Attorney General, the FBI Director, and the Chief of Naval Operations to the Secretary of the Navy.  *See* ECF Nos. 47-1, 47-2.  They are not mere "theor[ies]" advanced in preliminary "investigative documents" as in the case Plaintiffs cite.  *See In re Terrorist Attacks on September 11, 2001*, 2023 WL 1797629, at *11 (S.D.N.Y. Feb. 7, 2023).

### A.   Plaintiffs Failed To Establish That JASTA's Exception Applies

Plaintiffs sought to invoke JASTA's exception on three asserted bases: (1) Al Shamrani's attack, which Plaintiffs contended was within his "scope of employment" for Saudi Arabia, (2) alleged failures in Saudi Arabia's vetting, retention, and supervision of Al Shamrani, and (3) alleged material support for terrorism.  None of those bases is legally or factually supported.

### 1.   The Attack Was Not Within Al Shamrani's Scope Of Employment Or Agency

The Report correctly explains that JASTA's exception cannot apply based on Al Shamrani's attack because that attack was not "within the scope of [Al Shamrani's] . . . employment[] or agency."  28 U.S.C. § 1605B(b)(2); *see* R&R 15-21.  Florida law (which Plaintiffs agree (at 19) governs) imposes three requirements for conduct to be within the scope of employment:  "'the conduct (1) must have been the kind for which the employee was employed to perform; (2) must have occurred within the time and space limits of his employment; and (3) must have been activated at least in part by a purpose to serve the employment.'"  R&R 16 (quoting *Spencer v. Assurance Co. of Am.*, 39 F.3d 1146, 1150 (11th Cir. 1994)).

Although Plaintiffs agree (at 19) that the Report "cite[s] the right test," they incorrectly treat (at 21) the test as three factors to be "weigh[ed]."  The test includes three requirements; failure to satisfy any of those requirements means Al Shamrani's attack was not within the scope of his employment.  *See Spencer*, 39 F.3d at 1150

- 8 -

(holding that test was not satisfied based on first and third requirements without consideration of second "time and space" requirement); *Burke v. R.B. Baker Constr., Inc.*, 2005 WL 2077308, at *3 (M.D. Fla. Aug. 29, 2005) (failure to satisfy any requirement is "determinative"). Plaintiffs failed to satisfy the first and third factors.

a.     Under the first factor, the attack was not "the kind" of conduct Al Shamrani "was employed to perform." Al Shamrani was employed "to serve [Saudi Arabia's] national defense by flying airplanes and operating weapons systems as a member of its air force." R&R 17. Plaintiffs mischaracterize (at 18) that description of his employment as an "improper finding[] of fact," but it comes from their own allegations.[5] That alone shows that Al Shamrani's attack was not within the scope of his employment.

Further, under Florida law, intentional criminal acts like Al Shamrani's almost always fall outside the scope of employment. R&R 16-18; *see, e.g., Spencer*, 39 F.3d at 1150 (battery); *City of Green Cove Springs v. Donaldson*, 348 F.2d 197, 202-03 (5th Cir. 1965) (rape); ECF No. 46, at 13-14 & n.11 (collecting cases). As Plaintiffs' own principal case explains, this rule reflects "the common-sense idea" that "employees would not be hired to do something illegal, nor would

---

[5] Am. Compl. ¶ 56 ("Al-Shamrani trained as part of an Air Force Security Assistance and Training (AFSAT) Blanket Order for Training. . . . Prospective [Royal Saudi Air Force ("RSAF")] weapon systems officers (WSOs), like 2nd Lt. Al-Shamrani, complete all of their aviation training at NAS Pensacola.").

their illegal acts presumptively be in furtherance of their employer's interests." *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1263 (S.D. Fla. 2015), *cited in* Objs. 20-21; *see id.* at 1265 (employee's unlawful access of driver's license records was not within scope of employment); *see also Watts v. City of Port St. Lucie*, 2016 WL 1110316, at *4 (S.D. Fla. Mar. 22, 2016) (same for two police officers, although fact issue remained for one officer because of evidence that he accessed records for public-safety reasons).[6]

Plaintiffs note (at 20-21) that the rule has rare exceptions but give no reason why this case should be one.  Indeed, their own cases show why it should not.  Those cases found criminal acts within the scope of employment due to "overzealousness in the performance of . . . official duties," *Hennagan v. Department of Highway Safety & Motor Vehicles*, 467 So. 2d 748, 751 (Fla. Dist. Ct. App. 1985), where misconduct was "condoned" by the employer, *Parsons v. Weinstein Enters., Inc.*, 387 So. 2d 1044, 1045 (Fla. Dist. Ct. App. 1980), and where misconduct ("unjustified inmate abuse") "was tolerated or even encouraged by prison officials," *McMillan v. Department of Corr.*, 2016 WL 4059230, at *8 (July 8, 2016), *report & recommendation adopted*, 2016 WL 4059679 (N.D. Fla. July 27, 2016).

---

[6] Restatement (Second) of Agency § 235 (1958) – also cited by Plaintiffs – likewise explains:  "The fact that an act is done in an outrageous or abnormal manner has value in indicating that the servant is not actuated by an intent to perform the employer's business."  *Id.* § 235 cmt. c.

Plaintiffs make no allegations (and proffer no evidence) that the attack was related to Al Shamrani's duties as a weapons system officer or that Saudi Arabia encouraged or condoned his attack. *See* R&R 18 ("There is nothing before the Court to support a conclusion that a murderous rampage on a U.S. military installation was 'the kind [of conduct] for which [Al-Shamrani] was employed [by Saudi Arabia] to perform.'") (brackets in original; citation omitted).[7]

     **b.**     Under the third factor, Al Shamrani's attack had no purpose to serve his employment. He "committed the attack for his own reasons," not Saudi Arabia's. R&R 18. The attack also "jeopardiz[ed]" the "important strategic relationship" between Saudi Arabia and the United States. R&R 17-18. As Plaintiffs themselves alleged, "Saudi Arabia is the United States' largest foreign military sales customer," and the "United States' training of Saudi airmen, soldiers and sailors" was "a critical component" of that relationship. Am. Compl. ¶¶ 40-43. Indeed, Plaintiffs insist (at 32-33) that, if Saudi Arabia had supervised Al Shamrani more carefully, it would have prevented the attack – a theory that cannot be squared with the notion that the attack served any purpose of Al Shamrani's employment (or of Saudi Arabia).

---

[7] Plaintiffs misplace reliance on *Tampa Maid Seafood Products v. Porter*, 415 So. 2d 883 (Fla. Dist. Ct. App. 1982), which concerned the "course of employment" test for workers' compensation. *See id.* at 885. The "scope of employment" test for vicarious liability is "narrower." *Sussman v. Florida E. Coast Props., Inc.*, 557 So. 2d 74, 75 (Fla. Dist. Ct. App. 1990).

Plaintiffs' contention (at 24) that Al Shamrani's attack was "inspired by Saudi Arabia's political and religious ideology" is irrelevant and wrong.  Plaintiffs must show Al Shamrani's attack was "activated at least in part by a purpose to serve [his] employment."  *Spencer*, 39 F.3d at 1150.  Plaintiffs do not explain how attacking the country that was training Al Shamrani *for* his employment plausibly has served any purpose *of* that employment.  In any event, all admissible evidence contradicts any notion that Saudi Arabia's "ideology" supported the attack.  Saudi Arabia "immediately denounced Al-Shamrani's actions," gave "complete and total support" to the investigation, and is the sworn enemy of Al Qaeda (to which Al Shamrani pledged allegiance).  R&R 6, 18; *see* ECF No. 46, at 28.[8]

**c.**     Plaintiffs err in contending that Al Shamrani acted within the scope of employment because his position provided him with the ability and opportunity to commit the attack.  R&R 18-19.  As the Report explains, Florida law forecloses that argument.  That an act is possible "because of" an employment relationship does not place the act within the scope of employment.  *E.g.*, *Iglesia Cristiana La Casa Del Señor, Inc. v. L.M.*, 783 So. 2d 353, 358 (Fla. Dist. Ct. App. 2001) (per curiam); *see* ECF No. 46, at 14-15 & n.13 (citing cases); ECF No. 42, at 5-7

_____

[8] Plaintiffs note (at 24) that other Saudi trainees had "social media containing some jihadi or anti-American content."  January 13, 2020 Investigative Findings at 3.  But "there was no evidence of any affiliation or involvement with any terrorist activity or group."  *Id.*  The findings also did not indicate whether any of those trainees agreed with that social-media content.  None was charged.

(distinguishing Plaintiffs' authority).  Plaintiffs repeat (at 19-20) this argument in their objections but make no attempt to square it with Florida law.

### 2.   JASTA's Exception Does Not Apply To Saudi Arabia's Alleged Failures Of Vetting, Retention, And Supervision

Multiple independent grounds support the Report's recommendation that Plaintiffs cannot invoke JASTA's exception based on allegations of Saudi Arabia's vetting, retention, and supervision of Al Shamrani.

a.   JASTA carves out from its exception to immunity any claim "on the basis of an omission or a tortious act or acts that constitute mere negligence." 28 U.S.C. § 1605B(d).  Saudi Arabia's alleged failures to prevent Al Shamrani's attack were such "omission[s]."  R&R 22-24.

Plaintiffs incorrectly assert (at 25-27) that § 1605B(d) does not preclude reliance on omissions that are more than "mere negligence."  This Court should exercise its "discretion to decline to consider" this argument because it "was not first presented to the magistrate judge."  *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009); *see In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2022 WL 2436843, at *2 (N.D. Fla. Mar. 11, 2022).  After Saudi Arabia moved to dismiss on grounds that § 1605B(d) precluded reliance on any omission, *see* ECF No. 46, at 33, Plaintiffs argued that they had alleged "acts" rather than "omission[s]," *see* ECF No. 39, at 46-47 ("KSA's failure to implement established procedures for screening, monitoring, and reporting in relation to Al-Shamrani are instances

of KSA doing things 'in a wrong and negligent manner' ") (citation omitted). They did not preserve any argument that JASTA reaches "omission[s]" that are more than "mere negligence."

In any event, Plaintiffs' new argument lacks merit. The most natural reading of § 1605B(d) follows the rule of the last antecedent. *See Lockhart v. United States*, 577 U.S. 347, 351 (2016) ("The rule [of the last antecedent] provides that a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows.") (cleaned up). That is, the limiting phrase at the end ("that constitute mere negligence") modifies only the immediately preceding term ("a tortious act or acts") and not the more remote term ("an omission"). Accordingly, JASTA's exception does not apply (1) "on the basis" of any "omission," or (2) "on the basis" of any "tortious act or acts that constitute mere negligence."

Plaintiffs' interpretation also fails to explain why Congress used the separate words "omission[s]" and "tortious act[s]" in § 1605B(d). If Congress had meant to carve out only claims based on "mere negligence" (whether by act or omission), as Plaintiffs posit, Congress would have said just that: "on the basis of mere negligence." Congress's choice to separately list "omission[s]" and "tortious act[s]" should be given effect. *See Koch Foods, Inc. v. Secretary, U.S. Dep't of Labor*,

712 F.3d 476, 485 (11th Cir. 2013) ("Courts should disfavor interpretations of statutes that render language superfluous.") (brackets omitted).

Nor is there anything "unusual," as Plaintiffs claim (at 26-27), about treating "omission[s]" and "acts" differently.  As the Supreme Court recently explained in interpreting a different JASTA provision, "our legal system generally does not impose liability for mere omissions, inactions, or nonfeasance"; "tort law typically sanction[s] only 'wrongful conduct,' bad acts, and misfeasance."  *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1220-21 (2023); *see also Dudley v. Community Pub. Serv. Co.*, 108 F.2d 119, 121 (5th Cir. 1939) (drawing distinction between "non-feasance, which is doing nothing," and "misfeasance, the doing of things in a wrong and negligent manner").

Plaintiffs' reliance (at 26) on JASTA's "stated purpose" is also unavailing. Congress stated that it sought to provide "the broadest possible basis" for litigants to seek relief against "foreign countries . . . *that have provided material support* . . . to foreign organizations or persons that engage in terrorist activities against the United States."  JASTA § 2(b), 130 Stat. 853 (emphasis added).  Congress's desire to expand the scope of jurisdiction in cases of misfeasance – material support to terrorists – has no bearing on the scope of jurisdiction in cases of nonfeasance.

**b.**      Plaintiffs' allegations regarding vetting, retention, and supervision are based on omissions, not affirmative acts.  As the Report explains, those allegations

concern Saudi Arabia's "'failure to do something.'"  R&R 24; *see*, *e.g.*, Am.
Compl. § V.I (section regarding Saudi Arabia's "failures to investigate, monitor,
supervise and report Al-Shamrani") (capitalization omitted), § V.J (same), ¶ 513
(listing 24 "[f]ailure[s]"), ¶ 515 (listing 30 "[f]ailure[s]").  Plaintiffs' objections
use the same language.  *See*, *e.g.*, Objs. 33 ("[T]he [Country Liaison Officer's
("CLO")] failures, and particularly his absence, were contributing factors leading
to the attack.") (cleaned up), 36 ("KSA willfully failed to comply with the terms
of the training agreement.").

      Plaintiffs fail (at 27-28) to recast these omissions as "affirmative act[s] with
gross negligence."  The "affirmative acts" that Plaintiffs list – vetting, hiring, and
supervising Al Shamrani – are not the "basis of" Plaintiffs' claims because none
is "wrongful conduct" by itself.  *Twitter*, 143 S. Ct. at 1221.  Each is tortious only
by reference to what Saudi Arabia allegedly did not do:  discover "Al-Shamrani's
terrorist inclinations" and prevent his attack.  Objs. 27-28.  That "inaction[] or
nonfeasance" cannot form the "basis of" an exception under JASTA.  *Twitter*,
143 S. Ct. at 1220-21 (explaining that "our legal system generally does not impose
liability" for "failing to call the police" to stop a robbery).

      **c.**     Even if JASTA's exception could be invoked based on omissions,
Plaintiffs agree (at 25) that the omission must be more than "mere negligence."
Saudi Arabia explained in its motion to dismiss that Plaintiffs also failed to meet

this requirement.  ECF No. 42, at 23-25; ECF No. 46, at 31-33.  The Report

assumes, without deciding, that Plaintiffs plausibly allege "gross" and not "mere"

negligence.  R&R 24 n.10.  If this Court does not adopt the Report's rejection of

these allegations as omissions, it should instead reject them as "mere negligence."

For Saudi Arabia's vetting, retention, and supervision of Al Shamrani to

constitute gross negligence or recklessness (as opposed to "mere negligence"),

Saudi Arabia must have "'known'" that the terrorist attack was "'imminent or

"clear and present."'"  ECF No. 46, at 31 (quoting *Bridges v. Speer*, 79 So. 2d 679,

682 (Fla. 1955)).  Plaintiffs themselves advocated a standard of "knowing" or

"deliberate indifference" that would require actual knowledge of the impending

attack.  *See* ECF No. 42, at 23-24.  Applying either standard, allegations that Saudi

Arabia was "'on notice'" or "'knew or should have known'" of the impending

attack sound in negligence and "'clearly fall short.'"  *Id.* at 24 (quoting *Franklin v.

Curry*, 738 F.3d 1246, 1249-50 (11th Cir. 2013) (per curiam)).

Plaintiffs make only conclusory allegations that Saudi Arabia "'knew of

Al-Shamrani's radicalization'" and was "'aware of Al-Shamrani's planned

attack.'"  ECF No. 46, at 32 (quoting Am. Compl. ¶¶ 39(b), 114, 136, 144, 366,

423, 512(i)-(ii), (x), (xiii)).  Those should be disregarded because "'bare assertions'"

of what Saudi Arabia "knew or should have known" are "'not entitled to be

assumed true.'"  *Mamani v. Berzain*, 654 F.3d 1148, 1153-54 (11th Cir. 2011)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)); *see id.* (requiring allegations of "specific acts" indicating knowledge).

Nor can Plaintiffs meet their burden of producing evidence to show more than mere negligence. To the contrary, the record before the Court shows FBI findings that there was "no evidence of assistance or pre-knowledge of the attack by other members of the Saudi military" and that "[e]arly reports" of complicity by "other Saudi cadets" were "not . . . accurate."[9]

**d.**     Plaintiffs also cannot satisfy JASTA's requirement that their injuries were "caused by" Saudi Arabia's alleged failures regarding hiring, vetting, and supervising Al Shamrani. 28 U.S.C. § 1605B(b). The Report recommends lack of causation as an independent basis for rejecting JASTA's exception as to those allegations. R&R 29 n.16. That recommendation is well-supported for the reasons given in Saudi Arabia's motion-to-dismiss briefing. ECF No. 42, at 16-19; ECF No. 46, at 22-27. Also, Plaintiffs have not raised (and so have forfeited) any objection. *See* 28 U.S.C. § 636(b)(1)(C); *Hardy v. Jones*, 2016 WL 5110486, at *1 (N.D. Fla. Sept. 20, 2016).

---

[9] Attorney General Barr and FBI Deputy Director Bowdich Hold Press Conference at 10:20-11:25 (Jan. 13, 2020) ("January 13, 2020 Press Conference"), https://www.youtube.com/watch?v=sXI5qUsPjEY, *cited in* ECF No. 46, at 6-7.

### 3.  Plaintiffs' Allegations That Saudi Arabia Provided Material Support Are Deficient

**a.**  Plaintiffs' final attempt to establish a JASTA exception is based on Saudi Arabia's alleged material support for Al Qaeda in Yemen.  The Report rejects "[t]hose allegations [as] conclusory and unsupported by the evidence in the record."  R&R 29; *see* R&R 31 n.17 (conclusory allegations fail a facial challenge).  Saudi Arabia explained in its motion-to-dismiss briefing why those allegations are insufficient, ECF No. 42, at 20-21; ECF No. 46, at 28-30, and Plaintiffs raise no objection on this point, *see* Objs. 28-29 & n.8.  Plaintiffs have thus abandoned their argument that Saudi Arabia's alleged material support for Al Qaeda warrants an exception to foreign sovereign immunity.

Plaintiffs claim (at 28-29) that the Report "overlook[ed]" an argument that Saudi Arabia provided material support to Al Shamrani.  But Plaintiffs never made this argument in their motion-to-dismiss briefing.  They raised only the baseless argument that Saudi Arabia materially supported Al Qaeda.  *See* ECF No. 39, at 41-42 (Section title:  "Plaintiffs adequately pleaded that KSA supported AQAP"); *id.* at 2, 36-38, 49-50, 53.  This Court should decline to consider Plaintiffs' unpreserved argument.  *See Williams*, 557 F.3d at 1292.

In any event, this new argument has the same flaw as Plaintiffs' allegations regarding the hiring, retention, and supervision of Al Shamrani.  The only "material support" that Saudi Arabia allegedly gave Al Shamrani was his position

as a weapons system officer.  *See* Objs. 29 ("training, lodging, money and access to a secure military base").  That act is not a "tortious act" to which JASTA can apply.  28 U.S.C. § 1605B(b)(2).  It is wrongful only by reference to what Saudi Arabia allegedly did not do – sufficiently vet and supervise Al Shamrani – which, as explained, is an "omission" to which JASTA does not apply.  *Supra* pp. 13-15; *see also supra* pp. 16-18 (alternative ground based on "mere negligence" requirement), 18 (same for causation).[10]

**b.**     The Report also correctly concludes that Plaintiffs' allegations (including their material-support allegations) do not satisfy JASTA's requirement that a plaintiff's injuries be "caused by," 28 U.S.C. § 1605B(b), a foreign state's "tortious act or acts," *id.* § 1605B(b)(2).  In reaching that conclusion, the Report accepts Plaintiffs' contention that § 1605B(b) requires "proximate cause" but does not require "but-for causation."  R&R 27-29.  Even on that standard, the Report reasons that Plaintiffs' "vague, conclusory, and unsubstantiated allegations of indirect support by Saudi Arabia" fail to show Saudi Arabia was "a substantial factor in the sequence of events that led to the [Pensacola] attack" or that the attack

---

[10] Plaintiffs' assertion (at 29) that Saudi Arabia "knowingly submitted false documentation" for Al Shamrani misplaces reliance on conclusory, implausible allegations that Saudi Arabia knew of his connections to terrorism and did not disclose them.  Am. Compl. ¶¶ 64-68.

was "reasonably foreseeable as a natural consequence of Saudi Arabia's actions."

R&R 34-35.  Plaintiffs' challenges to that reasoning fall short.

*First*, Plaintiffs incorrectly argue (at 31) that they did not need to show the attacks were "reasonably foreseeable."  Reasonable foreseeability is part of proximate cause.  *See O'Donnell v. United States*, 736 F. App'x 828, 833 (11th Cir. 2018) (per curiam) ("'[P]roximate causation . . . is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred.'") (quoting *McCain v. Florida Power Corp.*, 593 So. 2d 500, 502-03 (Fla. 1992)); *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) ("injury was reasonably foreseeable or anticipated as a natural consequence").  The cases Plaintiffs cite do not question the reasonable-foreseeability requirement; they reject a more stringent requirement that a defendant actually "*knew* of . . . specific attacks" when providing material support.  *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018) (emphasis added); *see Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 859 (2d Cir. 2021).

*Second*, Plaintiffs contend (at 30-31) that the causation standard is relaxed at the jurisdictional stage.  The cases Plaintiffs cite state that jurisdictional causation is different from (sometimes more lenient than) the causation standard for some underlying legal claims.  *See In re Terrorist Attacks on September 11, 2001*, 298 F. Supp. 3d 631, 645 n.8 (S.D.N.Y. 2018) ("Whether Plaintiffs will ultimately be able

- 21 -

to provide proof of causation sufficient to prevail on the substantive causes of

action . . . is a question separate and apart from the jurisdictional one raised here.").

But Plaintiffs never identify any flaw in the Report's conclusion that their vague

allegations do not satisfy any jurisdictional-causation standard – relaxed or not.

The Report's determination that Plaintiffs failed to allege causation is also

correct for the alternative reason that § 1605B(b) requires but-for causation and

Plaintiffs fail to allege such causation.  When Congress enacted § 1605B(b),

it legislated against "traditional background principles" that "phrase[s] such

as 'results from,'" "because of," "by reason of," and "based on" "impose[] a

requirement of but-for causation."  *Burrage v. United States*, 571 U.S. 204, 213-14

(2014); *see id.* at 212 ("[C]ourts regularly read [such] phrases . . . to require but-for

causality.").  Further, it is common ground that § 1605B(b) requires "proximate

causation," R&R 27-29, and "proximate cause necessarily encompasses *cause in

fact*, requiring proof of 'but-for' causation," *CFTC v. Southern Tr. Metals, Inc.*,

894 F.3d 1313, 1329 (11th Cir. 2018).

Although the Report reached the correct result, it incorrectly rejected the

"but-for" causation requirement based on out-of-circuit cases that identify no

reason (and there is none) for departing from the ordinary interpretation of

"caused by" that requires "but-for" causation.  R&R 27-29.[11]  Plaintiffs did not

dispute in their motion-to-dismiss briefing that, if but-for causation is required,

their allegations cannot meet that requirement.  *See* ECF No. 39, at 27-32.

Accordingly, this Court can and should clarify that the Report's result is correct

for the additional reason that Plaintiffs cannot show but-for causation.

### B.   Plaintiffs Failed To Establish That The Noncommercial-Torts Exception Applies

The noncommercial-torts exception applies to claims "for personal injury or

death . . . occurring in the United States and caused by the tortious act or omission

of [a] foreign state or of any official or employee of that foreign state while acting

within the scope of his office or employment."  28 U.S.C. § 1605(a)(5).  The

Report rejects Plaintiffs' theory that Saudi Arabia may be held vicariously liable

for Al Shamrani's attack under § 1605(a)(5) because Al Shamrani was not acting

within the scope of his employment.  R&R 36.  That recommendation was correct

and should be adopted for the same reasons as for JASTA.  *Supra* pp. 8-13.

---

[11] *See Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1127-28 (D.C. Cir. 2004); *Rux v. Republic of Sudan*, 461 F.3d 461, 473 (4th Cir. 2006); *Terrorist Attacks*, 298 F. Supp. 3d at 645.  Some of those cases cite *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), which held that a separate statute's use of the phrase "caused by" imposed a proximate-causation requirement.  *See id.* at 536.  Nothing in *Grubart* suggests that proximate causation excludes but-for causation.  As *Southern Trust Metals* explains, the better view is that but-for causation is a component of proximate causation.

As to Plaintiffs' direct-liability theories, the Report correctly reasons that Plaintiffs failed adequately to allege causation.  Like JASTA, the noncommercial-torts exception applies only to injuries "caused by" Saudi Arabia.  28 U.S.C. § 1605(a)(5).  That recommendation too should be adopted for the noncommercial-torts exception for the same reasons as for JASTA.  *Supra* pp. 20-23.

Leaving causation aside, the noncommercial-torts exception applies differently to Plaintiffs' direct-liability theories than JASTA.  R&R 36.  Unlike JASTA's exception, the noncommercial-torts exception has no carve-out for an "omission or a tortious act or acts that constitute mere negligence."  28 U.S.C. § 1605B(d).  Instead, the noncommercial-torts exception imposes two different limits on jurisdiction:  the entire-tort rule and the discretionary-function exemption.  Both independently and together, those limits bar Plaintiffs' attempts to invoke the noncommercial-torts exception.

### 1.    The "Entire Tort" Rule Bars Consideration Of Acts Or Omissions Occurring Outside The United States

Plaintiffs do not contest that "[t]he noncommercial tort exception only applies if the 'entire tort' was committed in the United States" – a limitation known as the "entire tort" rule.  R&R 37; *see In re Terrorist Attacks on September 11, 2001*, 714 F.3d 109, 115-16 (2d Cir. 2013) ("tortious act" and "injuries and damage" must occur within the United States).  They also do not contest that most of their allegations concern foreign conduct – including all allegations regarding

material support of terrorism – and thus are barred by the entire-tort rule.  *See*, *e.g.*, Am. Compl. ¶¶ 107-125, 135, 143, 512(i)-(viii), 513(i)-(ix), (xxiii), 514, 518.

Plaintiffs object (at 32-33) that a small portion of the alleged conduct occurred in the United States – namely, the CLO's alleged "abandon[ment of] his post" and resulting failure to supervise Al Shamrani.  But as the Report explains, Plaintiffs failure-to-supervise allegations are intertwined with Saudi Arabia's acts and omissions abroad.  R&R 39 ("Plaintiffs' allegations involve things they claim Saudi Arabian officials failed to do in Saudi Arabia," including "supervising the CLO assigned to" Pensacola); *see* Am. Compl. ¶¶ 157, 159, 178 (allegations regarding Saudi Arabia's alleged failure to address CLO's absence).  Accordingly, the Report correctly rejects any contention that the Amended Complaint alleges a standalone, domestic tort based on the CLO's absence.[12]

### 2.    Saudi Arabia's Hiring, Retention, And Supervision Of Al Shamrani Were Discretionary Functions

The discretionary-function exception bars application of the noncommercial-torts exception on the basis of "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether

---

[12] Contrary to Plaintiffs' criticism (at 32-33), the Report is fully consistent with *O'Bryan v. Holy See* that "'any portion of plaintiffs' claims that relies upon acts committed . . . abroad cannot survive.'"  R&R 39-40 n.20 (quoting 556 F.3d at 385) (ellipsis in R&R).  It simply rejected Plaintiffs' contention that "any portion" of their failure-to-supervise claims could survive without relying on alleged acts and omissions that occurred abroad.

the discretion be abused."  28 U.S.C. § 1605(a)(5)(A).  The Report correctly

recommends that Plaintiffs' allegations regarding the hiring, retention, and

supervision of Al Shamrani were discretionary functions that could not be the

basis for the noncommercial-torts exception.  R&R 41-43.

Plaintiffs do not contest that hiring, retaining, and supervising employees

are ordinarily discretionary functions.  They instead argue (at 33-34) that certain

policies "removed the CLO[']s discretion in his supervision of Al Shamrani."  To

prevail on that theory, Plaintiffs needed to identify a "federal statute, regulation,

or policy [that] specifically prescribes a course of action," thus eliminating any

"judgment or choice."  *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1157-

59 (11th Cir. 2020).  The Report considers each of the policies relied upon by

Plaintiffs and explains why those policies did not remove any discretion of Saudi

Arabia:  they either "regulate[d] the conduct of U.S. entities" or "did not mandate

that Saudi Arabia take any specific actions."  R&R 44-47.  Because Plaintiffs do

not identify any error in that reasoning, the recommendation should be adopted.

*See Ible v. Wells Fargo Bank, N.A.*, 2022 WL 3644031, at *2 (11th Cir. Aug. 24,

2022) (per curiam) (objections "waived" if "not specific").[13]

---

[13] Plaintiffs mischaracterize (at 34) the Report's analysis as a "factual finding."  To the contrary, Plaintiffs alleged some policies in their Amended Complaint, *see* ¶¶ 171-172, and raised others in their motion-to-dismiss briefing, *see* ECF No. 39, at 19-24.  Magistrate Judge Bolitho appropriately considered the policies as incorporated into the Amended Complaint and relied on the policies'

C.    **Plaintiffs Failed To Establish That The Commercial-Activity Exception Applies**

The Report concludes that the commercial-activity exception in § 1605(a)(2) does not apply for two independent reasons:  there is no "commercial activity" at issue, and, even if there were, Plaintiffs' allegations are not "based upon" that commercial activity.  R&R 48-54.

1.    **There Was No Relevant "Commercial Activity"**

"[C]ommercial activity" is " 'the *type*' of activity 'by which a private party engages in' trade or commerce."  *Jam v. International Fin. Corp.*, 139 S. Ct. 759, 772 (2019) (quoting *Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992)) (emphasis in *Weltover*).  Here, the activity at issue is military training for Al Shamrani – "[a]t its core," sovereign activity and not commercial activity in which private parties can engage.  R&R 50-51 (citing *MCI Telecomms. Corp. v. Alhadhood*, 82 F.3d 658, 664 (5th Cir. 1996)).

Plaintiffs erroneously contend (at 34-35) that the Report improperly relies on the "purpose" of the activity at issue rather than its "nature."  The Report correctly acknowledges that, under 28 U.S.C. § 1603(d), courts look to an activity's "nature" rather than its "purpose."  R&R 49.  It then considers what the activity was (military training) and whether private parties can engage in that activity

---

terms that "contradict[ed]" Plaintiffs' "general and conclusory allegations." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (per curiam).

(they cannot), just as Supreme Court precedent instructs.  R&R 49-52 (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 359 (1993)).  The Report's single reference to the "purpose of the arrangement" – read in context – refers to the "*type* of actions" at issue, not to Saudi Arabia's "motive" for them.  *Weltover*, 504 U.S. at 614-15.

Nor does the Report err in determining that the activity at issue was military training.  That determination was based on Plaintiffs' own allegations, not on any "factual findings" as Plaintiffs suggest (at 36).  Plaintiffs allege that Al Shamrani was in the United States receiving military training at the time of the attack.  Am. Compl. ¶¶ 56, 58.  Likewise, their current objections repeatedly refer (at 22, 29, 36) to military training Al Shamrani received in the United States.  They do not identify any other purportedly relevant "commercial activity."

Having properly identified the activity at issue, the Report correctly distinguishes the authority Plaintiffs cite, which concerned the *purchase* of military equipment, not training.  R&R 51-52 (citing *Samco Glob. Arms, Inc. v. Arita*, 395 F.3d 1212, 1216 (11th Cir. 2005)).  Military training – such as "flight operations services and training" to the RSAF – is sovereign activity, "[u]nlike a contract to buy army boots or bullets."  *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 216 (5th Cir. 2009); *see MCI Telecomms.*, 82 F.3d at 664.

- 28 -

### 2.   Plaintiffs' Suit Is Not "Based Upon" Military Training

The commercial-activity exception also requires Plaintiffs' action to be "based upon" the alleged commercial activity.  28 U.S.C. § 1605(a)(2).  That means the alleged commercial activity must "constitute[] the 'gravamen' of the suit."  *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 34-35 (2015).  Here, the "gravamen" of Plaintiffs' action was "a terrorist attack and the harms it caused," not "some commercial deal gone bad."  R&R 54.  Plaintiffs' allegations focused on Al Shamrani's attack, *e.g.*, Am. Compl. ¶¶ 345-362; alleged negligent hiring and inadequate supervision of Al Shamrani, *e.g.*, *id.*, ¶¶ 135-186, 502-525; and purported support to Al Qaeda, *e.g.*, *id.*, ¶¶ 78-106.  *See* R&R 2-7.

Plaintiffs erroneously contend (at 36) that their "direct negligence claim" is "based upon" Saudi Arabia's breach of the "training agreement" with the United States.  But Plaintiffs have never identified any provision in the "training agreement" that Saudi Arabia allegedly breached – in their Amended Complaint, *see* ¶¶ 582-601, their motion-to-dismiss briefing, *see* ECF No. 39, at 57, 59, or now, *see* Objs. 36-37.  The standard terms and conditions they cite in the Amended Complaint (at ¶ 53) disclaim judicial enforcement even by parties, let alone third

parties.[14]  So the "core of the[] suit" and the "acts that actually injured" Plaintiffs,

*OBB Personenverkehr*, 577 U.S. at 35, was not any breach of contract.

### D. Plaintiffs Failed To Establish A Waiver Of Foreign Sovereign Immunity

Plaintiffs did not meet the "exacting" standard for waiver under § 1605(a)(1).

R&R 54-59.  Plaintiffs object only to the recommendation that the military training

agreement was not a waiver of immunity; they do not object (and thus have

forfeited any objection) to the Report's recommendation that Saudi Arabia's

conduct after the attack waived sovereign immunity.

As to the military training agreement, Plaintiffs contend (at 37) that the

Report errs in relying on a "template contract."  But Plaintiffs themselves based

their allegations on that "template contract" – which they called the Letter of Offer

and Acceptance ("LOA").  *See* Am. Compl. ¶¶ 53-54 ("Each LOA contains a set of

Standard Terms and Conditions . . . .");  *id.* ¶¶ 586, 588-589 (waiver allegations).

The "template contract" was therefore incorporated into the Amended Complaint

by reference.  *See Luke*, 975 F.3d at 1144.  Plaintiffs identify no error in the

Report's analysis of the "template contract."

---

[14] *See* ECF No. 27-1, at 426 (¶ 7.2) (agreeing "to resolve any disagreement regarding this LOA by consultations between the [U.S. Government] and the Purchaser and not to refer any such disagreement to any international tribunal or third party for settlement").

### III.   Denial Of Jurisdictional Discovery Was Not Clearly Erroneous Or Contrary To Law

Foreign sovereigns are presumptively immune "from the hassle and expense of the litigation process."  R&R 59 (citing *Arch Trading*, 839 F.3d at 206).  To obtain any jurisdictional discovery, plaintiffs "must first 'establish a *prima facie* case' that jurisdiction is proper under an exception to the FSIA."  R&R 61 (quoting *Butler*, 579 F.3d at 1314).  Even where there is such a *prima facie* case, jurisdictional discovery should be "'ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination.'"  R&R 60 (quoting *Butler*, 579 F.3d at 1314).  *See generally* ECF No. 44, at 3-8 (Saudi Arabia opposition brief).  Although Plaintiffs object to the application of these principles, they raise no objection to the legal standard.  *See* Objs. 13-16. The Report did not clearly err in applying that legal standard here.

**A.**   Plaintiffs were not eligible to receive any jurisdictional discovery because they did not establish a *prima facie* case that an exception to foreign sovereign immunity applied.  R&R 61.  Contrary to Plaintiffs' argument (at 14), that holding was not just due to Plaintiffs' lack of "documentary evidence."  It was driven independently (and primarily) by their failure to adequately allege any exception to foreign sovereign immunity.  *Supra* p. 6.  Indeed, it would have been an "abuse[] [of] discretion," *Butler*, 579 F.3d at 1314, to allow jurisdictional discovery based on legally insufficient allegations.

In any event, binding Eleventh Circuit precedent provides that Plaintiffs bear the burden of production.  *Supra* pp. 4-5 (citing *Devengoechea*, 889 F.3d at 1221 n.9, and *Butler*, 579 F.3d at 1312-13); *accord Arch Trading*, 839 F.3d at 206-07. This requirement "balance[s] the need for discovery . . . against the need to protect a sovereign's . . . legitimate claim to immunity from discovery."  *Butler*, 579 F.3d at 1314 (cleaned up); *see Sequeira v. Republic of Nicaragua*, 815 F. App'x 345, 351-52 (11th Cir. 2020) (per curiam).  Even if the Report's ruling had been based solely on Plaintiffs' failure to meet that burden, it would have been correct.

Plaintiffs cite no authority to the contrary.  The two out-of-circuit cases they cite (at 15-16) hold that, "*[w]hen* . . . there is a factual question regarding a foreign sovereign's entitlement to immunity," a court "must give the plaintiff ample opportunity to secure and present evidence."  *Hansen v. PT Bank Negara Indonesia (Persero), TBK*, 601 F.3d 1059, 1063-64 (10th Cir. 2010); *see Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (similar ruling as to "resolv[ing] any disputed issues of fact").  But there is no factual question at issue until Plaintiffs meet their burden of production.

**B.**     Magistrate Judge Bolitho acted well within his discretion in finding each of Plaintiffs' eight "buckets" of discovery requests overbroad.  R&R 61-63; *see also* ECF No. 44, at 16-26 (Saudi Arabia's opposition explaining flaws with each bucket).  During oral argument, he even invited Plaintiffs to narrow their

requests.  *See* ECF No. 53, at 57-61 ("[I]t would be helpful if you had some specific areas where you think . . . we can do some circumscribed, narrow jurisdictional discovery[.]").  They declined and sought all eight "buckets," admitting they were "quite broad."  *Id.* at 58; *see, e.g., id.* at 61 ("multiple fronts in which we may need to do discovery"); *id.* at 111-13 (additional discovery sought).

Plaintiffs thus sought to engage in a "'fishing expedition' . . . 'without any non-speculative basis for believing that [the information] would establish jurisdiction' under the FSIA."  R&R 63 (quoting *Arch Trading*, 839 F.3d at 207) (brackets in R&R).  The FBI had already conducted a thorough investigation "involv[ing] hundreds of special agents from the FBI, intelligence analysts, and professional experts"; interviews of "more than 500 witnesses, base personnel, and the shooter's friends, classmates and associates"; "dozens of surveillance teams"; and "numerous search warrants, subpoenas, court orders, and emergency disclosure requests."  January 13, 2020 Press Conference at 10:20-11:25.  That investigation rejected the core premise of Plaintiffs' suit:  purported assistance to Al Shamrani or pre-knowledge of his plans by other members of the Saudi military.  There is no reason to think jurisdictional discovery would reveal anything to alter that finding.

Plaintiffs do not raise specific objections to denial of any specific "bucket" of discovery.  Instead, they argue (at 12 n.2, 15) they are entitled to discovery

because jurisdiction is "intertwined" with the merits.  But the jurisdictional question

whether Saudi Arabia is immune from suit must be "decide[d] . . . 'at the threshold'

of the action."  *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l*

*Drilling Co.*, 581 U.S. 170, 187 (2017) (quoting *Verlinden B.V. v. Central Bank of*

*Nigeria*, 461 U.S. 480, 493-94 (1983)) (brackets omitted).  That rule applies even

where "merits and jurisdiction . . . come intertwined" and serves "foreign sovereign

immunity's basic objective, namely, to free a foreign sovereign from *suit*."  *Id.* at

174, 178; *see* R&R 11 n.7.[15]

## CONCLUSION

The Court should adopt the Report and Recommendation in full.

---

[15] Plaintiffs' cases – *Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir. 1990) (per curiam), and *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) – are inapposite.  Those cases (and others Plaintiffs earlier cited) did not "involve[] jurisdictional discovery of a foreign state," and "the rules are entirely different when [such] discovery is sought."  R&R 59-60 n.25.

Dated: August 9, 2023                    Respectfully submitted,

                                         */s/ Benjamin H. Brodsky*
                                         Benjamin H. Brodsky
                                         Florida Bar No. 73748
                                         Brodsky Fotiu-Wojtowicz, PLLC
                                         200 SE 1st Street, Suite 400
                                         Miami, Florida 33131
                                         Tel: (305) 503-5054
                                         bbrodsky@bfwlegal.com
                                         docketing@bfwlegal.com

                                         Michael K. Kellogg (*pro hac vice*)
                                         Gregory G. Rapawy (*pro hac vice*)
                                         Andrew C. Shen (*pro hac vice*)
                                         Kellogg, Hansen, Todd,
                                            Figel & Frederick, P.L.L.C.
                                         1615 M Street, N.W., Suite 400
                                         Washington, D.C. 20036
                                         Tel: (202) 326-7900
                                         Fax: (202) 326-7999
                                         mkellogg@kellogghansen.com
                                         grapawy@kellogghansen.com
                                         ashen@kellogghansen.com

                                         *Counsel for the Kingdom of Saudi Arabia*

## LOCAL RULE 7.1(F) CERTIFICATION

I, Benjamin H. Brodsky, hereby certify that, pursuant to Local Rule 7.1(F), The Kingdom of Saudi Arabia's Response to Plaintiffs' Rule 72 Objections contains 7,950 words.

## LOCAL RULE 5.1(F) CERTIFICATION

I, Benjamin H. Brodsky, hereby certify that on August 9, 2023 I caused a true and correct copy of The Kingdom of Saudi Arabia's Response to Plaintiffs' Rule 72 Objections to be served via the CM/ECF system to all parties or counsel of record that have entered appearances in this action.

Respectfully submitted,

*/s/ Benjamin H. Brodsky*
Benjamin H. Brodsky
Florida Bar No. 73748
Brodsky Fotiu-Wojtowicz, PLLC
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel: (305) 503-5054
bbrodsky@bfwlegal.com
docketing@bfwlegal.com