UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BENJAMIN WATSON, JR, et al.,

    Plaintiffs,

v.                                        CASE NO. 3:21cv329-MCR-ZCB

KINGDOM OF SAUDI ARABIA,

    Defendant.
_____/

## ORDER

    This case is before the Court on remand from the Eleventh Circuit to address a factual challenge to one claim of gross negligence, which constitutes an exception to sovereign immunity under the Justice Against Sponsors of Terrorism Act ("JASTA"), 28 U.S.C. § 1605B. Plaintiffs allege that the Kingdom of Saudia Arabia was grossly negligent in vetting, hiring, and sending a Saudia Arabian national—Mohammed Saeed Al-Shamrani—to Naval Air Station Pensacola for flight training, where, on December 6, 2019, he opened fire, tragically killing and seriously wounding multiple military members and law enforcement personnel.[1] The Parties were directed to submit supplemental briefing on next steps following remand.

---

[1] The facts at issue are set out in the Magistrate Judge's Report and Recommendation, ECF No. 54, the Court's prior adopting order, ECF No. 72 (affirmed in part and reversed in part), and the Eleventh Circuit's opinion, ECF No. 80. The undersigned will assume the reader's familiarity with the facts and will re-state only those allegations necessary to this Order.

Plaintiffs request jurisdictional discovery to establish their claim of gross negligence. Saudia Arabia objects to jurisdictional discovery and argues instead that its factual challenge to Plaintiff's negligence claim should be decided on the existing record. *See* ECF Nos. 27–1, 39.  Having considered the record and the Parties' supplemental briefing, ECF Nos. 88 & 89, the Court concludes that Plaintiffs are entitled to limited jurisdictional discovery.

Previously, the Court dismissed the entire case for lack of subject matter jurisdiction based on Saudi Arabia's sovereign immunity, concluding that Plaintiffs had not set forth a facially plausible claim showing an exception to immunity, and thus finding that jurisdictional discovery was not warranted. ECF No. 72. On appeal, the Eleventh Circuit affirmed the dismissal of all claims except the negligent vetting/hiring/sending claim. *See Watson v. Kingdom of Saudi Arabia*, 159 F.4th 1234 (11th Cir. 2025) (ECF No. 80).  The court concluded that this claim is facially plausible because it alleges conduct that rose to the level of gross negligence under Florida law, as is necessary to invoke the exception to immunity found in § 1605B of JATSA.  *See id.* at 1253–54 (construing § 1605B(d), which excludes acts of "mere negligence" from JATSA's reach, as referring only to ordinary negligence, not gross negligence).  The court remanded to allow this Court to answer, in the first instance,

whether Saudia Arabia's alleged conduct in hiring, vetting, and sending Al-Shamrani to the United States survives a factual challenge to jurisdiction. *Id.* at 1274.

In the Amended Complaint, Plaintiffs allege that Saudi Arabia selected Al-Shamrani, a Second Lieutenant in the Royal Saudi Air Force, to participate in joint flight training at NAS Pensacola, and he entered the United States in August 2017, after Saudi Arabia's Ministry of Defense had vetted him and subjected him to security screening. ECF No. 5 at 25–27 (Am. Compl. ¶¶ 62-68). They allege that Saudi Arabia knowingly submitted false information to the United States in Al-Shamrani's Form DS-160 Online Nonimmigrant Visa Application for an A-2 Visa as a foreign government official and represented to the United States that Al-Shamrani had cleared the requisite security, medical, and internal character vetting. Plaintiffs also allege that Saudi Arabia engages in active surveillance of its citizens through the citizens' use of mobile phones, the internet, and social media. *Id.* at 24–47 (Am. Compl. ¶¶ 107–125). Plaintiffs claim that based on this monitoring, Saudi Arabia knew or should have known as early as 2015 and certainly by August 2017, of "Al-Shamrani's radicalization and anti-American sentiments, which were publicly associated with a Twitter account bearing his name," and his affiliation with a terrorist group, al-Qaida in the Arabian Peninsula (AQAP). *Id.* at 49–51 (Am. Compl. ¶¶ 136, 144). Plaintiffs allege that Saudi Arabia knowingly disregarded all of this

information and, despite the foreseeable risks, recklessly or willfully sent Al-Shamrani to participate in a joint flight training program in the United States, where he went on a murderous rampage.[2]  *Id.* at 48–51 (Am. Compl. ¶¶ 131–146). According to the allegations, an appropriate investigation would have readily revealed that Al-Shamrani was not a suitable candidate for flight training in the United States.  The Eleventh Circuit ultimately concluded that Saudi Arabia's alleged knowledge and awareness of the imminent danger Al-Shamrani posed combined with conduct showing a conscious disregard of the consequences was sufficient to state a claim for gross negligence for purposes of JASTA, 28 U.S.C. § 1605B. *See Watson*, 159 F.4th at 1253–62.

The issue before the Court on remand is whether the claim can withstand a factual challenge.  In the post-remand briefing, Saudi Arabia argues that Plaintiffs had the opportunity to submit evidence in response to the motion to dismiss and in fact submitted 26 exhibits.[3]  Saudi Arabia argues that none of those exhibits shows a

---

[2] On February 2, 2020, AQAP posted a video claiming responsibility for the attack.  ECF No. 5 at 87 (Am. Compl. ¶ 326).  The FBI announced on May 18, 2020 that it had successfully unlocked Al-Shamrani's iPhone, which revealed that he had been radicalized years before joining the RSAF and that he was in direct communication with AQAP up until the evening before the attack.  *Id.* at 90 (Am. Compl. ¶ 341).

[3] Plaintiffs' exhibits included a screenshot of Al-Shamrani's Twitter account as of December 9, 2019, ECF No. 39-6; a sample DS-160 Nonimmigrant Visa Application that Al-Shamrani would have submitted before coming to the United States, ECF No. 39-10; a sample Invitational Travel Order, similar to what the United States would have issued Al-Shamrani before he came to the

public statement by Al-Shamrani prior to August 2017 that would have put Saudi Arabia on notice of his radicalization, as needed to raise an inference that Saudi Arabia acted knowingly and with conscious disregard. Saudi Arabia urges the Court to consider the Navy's investigative report and the FBI's public statements about its parallel investigation which indicate it took six months after the attack for them to confirm Al-Shamrani's 2015 links to AQAP, that Al-Shamrani's Twitter account was not easily traceable to him, and that his 2015 radicalization was not public. Saudi Arabia further argues that the Court has already rejected requests for jurisdictional discovery and is now precluded by the mandate rule from allowing discovery because Plaintiffs represented on appeal that jurisdictional discovery was unnecessary except as to the contract claim. Plaintiffs disagree with this view of the mandate rule and assert that Saudi Arabia's arguments actually demonstrate the need for jurisdictional discovery on the remaining gross negligence claim. The Court agrees.

First, the mandate rule merely applies the law of the case doctrine, which binds the district court to rulings decided explicitly or by implication in a prior appeal. *See United States v. Tamayo*, 80 F.3d 1514, 1520 (11th Cir. 1996). This means that the

---

United States, ECF No. 39-11; several United States military manuals, policies, and forms, ECF Nos. 39-12 to 39-15; a 2020 Human Rights Report issued by the United States State Department about Saudi Arabia, ECF No. 39-23; and a February 2018 issue of a magazine titled "The Muslim Soldier," ECF No. 39-24.

CASE NO: 3:21cv329-MCR-ZCB

district court "cannot vary [the mandate], or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *Id.* (internal quotations omitted). The district court abuses its discretion if it rules on matters beyond the scope of a limited mandate. *United States v. Smith*, No. 24-11377, 2025 WL 3485431, at *2 (11th Cir. Dec. 4, 2025). While, on remand, the Court most certainly is not free to revisit arguments or issues that *were* addressed by the Eleventh Circuit, the only issue related to jurisdictional discovery that was raised and addressed on appeal was directed at Count 19, a breach of contract claim. The Eleventh Circuit agreed with the undersigned that the breach of contract claim failed *facially* and thus discovery was not warranted.[4] The court remanded the one claim it found facially plausible to allow this Court to consider the factual attack; it did not tie the undersigned's hands regarding jurisdictional discovery or even address the issue in relation to the gross negligence claim. The scope of the mandate thus allows a determination of whether jurisdictional discovery is warranted on this claim.

---

[4] *See Watson*, 159 F.4th at 1273 ("Since the Amended Complaint fails to state a *prima facie* breach of contract claim, the district court correctly denied the Plaintiffs' Motion for Jurisdictional Discovery on Count Nineteen.").

CASE NO: 3:21cv329-MCR-ZCB

Because Saudi Arabia challenges Plaintiffs' assertion of a factual basis in regard to Saudi Arabia's knowledge to support the vetting/hiring/sending claim, Plaintiffs must come forward with evidence to substantiate that this exception to immunity applies. *See Devengoechea v. Bolivarian Republic of Venezuela,* 889 F.3d 1213, 1222 n.9 (11th Cir. 2018) (stating plaintiff bears the burden of production to make an initial showing factually that jurisdiction exists based on a FISA exception). To determine whether discovery is warranted, courts must balance the plaintiff's need to substantiate a sovereign immunity exception "against the need to protect a sovereign's or sovereign agency's legitimate claim to immunity from discovery." *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314 (11th Cir. 2009) (internal quotations and alterations omitted). As the Eleventh Circuit recognized in its decision on appeal, "[w]hen facts that go to the merits and the court's jurisdiction are intertwined and genuinely in dispute, parties have a 'qualified right to jurisdictional discovery.'" *Watson*, 159 F.4th at 1273 (quoting *Am. C.L. Union of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017)). District courts retain "considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction" and must give the plaintiff "ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (internal quotations omitted).

That said, jurisdictional discovery must be "ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination."[5] *Watson*, 159 F.4th at 1274 (quoting *Butler*, 579 F.3d at 1314); *see also Federal Ins. Co. v. Richard I. Rubin & Co., Inc.*, 12 F.3d 1270, 1284 n.11 (3d Cir. 1993) ("[D]iscovery and fact-finding should be limited to the essentials necessary to determining the preliminary question of jurisdiction.").

Jurisdictional discovery is warranted.  As the Eleventh Circuit determined, Plaintiffs pleaded a facially plausible claim of gross negligence in vetting, hiring, and sending Al-Shamrani to NAS Pensacola.  That claim is supported by specific, non-conclusory allegations of fact that Saudi Arabia had knowledge, namely, that Saudi Arabia monitors its citizens' use of phones, internet, and social media and Al-Shamrani had made statements using those communications, which would have raised red flags about his radicalization before he was sent to NAS Pensacola. Plaintiffs also assert that Saudi Arabia presented false information to the United States on his Nonimmigrant Visa Application representing he was not a security risk. Discovery is appropriate because Saudi Arabia disputes these allegations, and the

---

[5] *See also* Fed. Judicial Ctr. Int'l Litigation Guide, *The Foreign Sovereign Immunities Act: A Guide for Judges*, at 28–29 (2d ed. 2018) ("Absent specific facts providing a reasonable basis for assuming jurisdiction, jurisdictional discovery may be refused." (internal quotations omitted)).

facts alleged are peculiarly within its possession or the possession of United States government agencies. Plaintiffs should have an opportunity to verify their allegations with evidence in order to establish jurisdiction under JATSA. This discovery must be granted circumspectly and limited to verifying and confirming the disputed allegations—in this instance, those relating to Saudi Arabia's potential knowledge and/or conscious disregard of Al-Shamrani's radicalization and anti-American sentiments prior to sending him here in August 2017, which posed a foreseeable security risk, and allegations of false representations in his Nonimmigrant Visa Application provided to the United States government. While Plaintiffs have submitted a long list of items for discovery that are purportedly tailored to the task, the Court concludes it is most appropriate to refer this matter to the Magistrate Judge to hear from the Parties and determine the precise inquiries that will be allowed.

Accordingly, the Court defers ruling on the motion to dismiss factual challenge to Saudi Arabia's claim of gross negligence in vetting, hiring, and sending Al-Shamrani to the United States, and the Plaintiffs have 90 days for jurisdictional discovery. The case is referred to the Magistrate Judge to determine the precise limits and scope of this discovery.

**DONE AND ORDERED** this 3rd day of March 2026.

*M. Casey Rodgers*
_____
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

CASE NO: 3:21cv329-MCR-ZCB