**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| BENJAMIN WATSON, JR., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. |
| ) | 3:21-cv-00329-MCR-ZCB |
| ) | |
| v. ) | |
| ) | |
| ) | |
| KINGDOM OF SAUDI ARABIA ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**PLAINTIFFS' OPPOSITION TO THE UNITED STATES'**
**MOTION TO QUASH PLAINTIFFS' SUBPOENA FOR DOCUMENTS**

Plaintiffs respectfully submit this opposition to the United States' Motion to

Quash Plaintiffs' Subpoena for documents [ECF No. 98].[1]

## I.    Introduction

The United States Department of Justice ("DOJ") asks this Court to quash a

duly issued subpoena based on a blanket Touhy denial that is unsupported by any

declaration, privilege log, or factual record. That showing is inadequate as a matter

---

[1] A copy of Plaintiffs' subpoena and Touhy letter is attached as Exhibit A. Notably, the subpoena attached to the DOJ's Motion to Quash (ECF No. 98-1) appears to be the copy included with the Rule 45 notice served on the Kingdom of Saudi Arabia ("KSA"), rather than the copy served directly on the DOJ. Although the subpoenas are substantively identical, the notice to KSA was not publicly filed or circulated. Thus, the record strongly suggests that KSA provided the Notice to the DOJ in connection with the Motion to Quash. This is notable because KSA has represented that it is unavailable to participate in discovery due to the ongoing conflict in the Middle East. *See* ECF Nos. 92, 94, 96, 100.

of law. As this Court has repeatedly held, a federal agency may not avoid discovery through conclusory assertions or categorical denials. It must examine the relevant facts and articulate a rational connection between those facts and its decision. Here, the DOJ has done neither.

Plaintiffs seek discrete, highly relevant factual materials central to the jurisdictional discovery authorized by the Court, including documents bearing on Mohammed Al-Shamrani's ("Al-Shamrani") radicalization and the Kingdom of Saudi Arabia's ("KSA") knowledge of that radicalization. The DOJ has refused to produce *any* documents.

For these reasons, and those that follow, the Motion to Quash should be denied and the DOJ should be compelled to produce all non-privileged responsive materials to the following four document requests:[2]

> **Request No. 1**
> Documents that reflect the factual basis for, or otherwise support or relate to, the public statements by the FBI and Department of Justice that, based on a review of Al-Shamrani's electronic devices:
> - (a) he had been radicalized since 2015;
> - (b) he had joined the Royal Saudi Air Force to carry out a special operation; and
> - (c) he had been communicating with Al-Qaeda in the Arabian Peninsula (AQAP) prior to entering the United States.
>
> **Request No. 2**
> Documents that reflect the factual basis for, or otherwise support or relate to, the public statements by the FBI and Department of Justice that:

---

[2] The DOJ should further be compelled to produce a privilege log listing each and every document subject to a claim of privilege and the legal and factual basis for its assertion.

(a) Al-Shamrani was motivated by jihadist ideology; and

(b) 17 members of the Saudi military who were training in the United States possessed jihadi or anti-American content.

**Request No. 3**

Documents provided by, or reflecting information provided by, the Kingdom of Saudi Arabia to the FBI or Department of Justice concerning Al-Shamrani's radicalization, extremist beliefs, or associations.

**Request No. 4**

Documents reviewed, relied upon, or requested by the Department of Justice in investigating Al-Shamrani's radicalization, including but not limited to materials obtained from foreign governments, digital devices, social media accounts, or screening and vetting records.

## II.    Meet and Conferral

On April 28, 2026, counsel for all Plaintiffs and the United States met and conferred regarding the Touhy request and subpoena. During that conferral, counsel for the United States acknowledged that Plaintiffs' requests are relevant, discrete, and narrowly tailored. Notwithstanding those acknowledgments, counsel for the United States confirmed that the DOJ will not produce any documents in response to the subpoena under any circumstances. Counsel further stated that the DOJ will not provide a supporting declaration or privilege log and will not agree to produce documents subject to a protective order or for *in camera* review.

Counsel further confirmed that the DOJ's Touhy denial and Motion to Quash are based on its position that all responsive documents are protected from disclosure by one or more of the following three privileges: (i) the law enforcement privilege; (ii) grand jury secrecy; and (iii) classified information.

The DOJ does not assert any other privilege or basis for withholding responsive materials.

## III.    Procedural History

This action arises from a terrorist attack carried out on December 6, 2019, at Naval Air Station Pensacola ("NAS Pensacola"), in which Al-Shamrani, a member of the Saudi Royal Air Force, opened fire, killing and seriously wounding multiple United States military personnel and law enforcement officers. Plaintiffs are the victims of that attack and their family members.

On appeal, the Eleventh Circuit held that Plaintiffs plausibly alleged that KSA was grossly negligent in vetting, hiring, and sending Al-Shamrani to the United States, thereby satisfying the requirements of the terrorism exception to sovereign immunity under the Justice Against Sponsors of Terrorism Act ("JASTA"). The Eleventh Circuit concluded that Plaintiffs' claims are facially sufficient and that the relevant jurisdictional inquiry now turns on the underlying facts, including what KSA knew or should have known about Al-Shamrani's radicalization before sending him to the United States.

On remand, this Court authorized jurisdictional discovery to permit the parties to develop the factual record necessary to resolve those issues. In doing so, the Court recognized that the critical evidence bearing on Al-Shamrani's radicalization (his communications and social media activity, and the vetting and certification process

that allowed him to enter the United States) resides largely in the possession of KSA and various U.S. government agencies. Without access to that evidence, Plaintiffs cannot meaningfully respond to the factual challenge to jurisdiction raised by KSA, and the Court cannot resolve the jurisdictional issues identified by the Eleventh Circuit.

Consistent with that Order, Plaintiffs served a narrowly tailored Touhy request and Rule 45 subpoena on the DOJ seeking only four discrete categories of documents directly relevant to the issues identified by the Eleventh Circuit and this Court. *See* Ex. A, DOJ Subpoena. Those requests are limited to factual materials, including Al-Shamrani's social media activity, electronic communications, and information provided by KSA to the United States in connection with his participation in the flight training program. *Id.* Plaintiffs do not seek deliberative materials, internal policy discussions, or other categories that would ordinarily implicate the privileges asserted by the DOJ.

The government's own public statements underscore the importance of these materials. Following the attack, the DOJ and the Federal Bureau of Investigation ("FBI") publicly announced it had obtained factual evidence regarding Al-Shamrani's radicalization, including that he had been radicalized prior to entering the United States, had expressed anti-American and jihadist views on social media, and had communicated with al-Qaeda in the Arabian Peninsula ("AQAP"). ECF No.

47-2, at 2-3; ECF No. 47-3, at 1-2. Those findings were based on a review of Al-Shamrani's digital devices and social media accounts—materials that neither Plaintiffs nor this Court have been permitted to review. As Plaintiffs explained on remand, the current record relies on high-level government summaries rather than the underlying evidence itself.[3]

Against this backdrop, the DOJ's categorical refusal to produce any documents would undermine the jurisdictional discovery authorized by this Court and the Eleventh Circuit's mandate.

On April 21, 2026, the DOJ served Plaintiffs with its Touhy denial asserting that all responsive materials are privileged and that no documents would be produced. ECF No. 98-2.

## IV.  Governing Law

In the Eleventh Circuit, a federal agency's refusal to comply with a subpoena issued pursuant to Touhy regulations is generally reviewed under the Administrative Procedure Act ("APA").[4] *See Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194,

---

[3]  Plaintiffs also served Touhy requests and subpoenas on the FBI, Department of State, and Department of the Navy. As of the date of this filing, none of those entities has produced documents or asserted objections.

[4]  Plaintiffs recognize that binding Eleventh Circuit precedent generally reviews Touhy determinations under the APA. Plaintiffs therefore present this Motion under the APA framework applied by this Circuit and by this Court in the 3M litigation. Plaintiffs nevertheless preserve for appeal the argument that Federal Rule of Civil Procedure 45 and federal common law provide the proper framework governing federal agency compliance with subpoenas, consistent with the approach adopted in other circuits, including the D.C. Circuit.

1197 (11th Cir. 1991); *Westchester General Hospital, Inc. v. Department of Health and Human Services*, 443 F. App'x 407, 410 (11th Cir. 2011). The Department of Justice's Touhy regulations were promulgated pursuant to the Housekeeping Statute, 5 U.S.C. § 301, and are codified at 28 C.F.R. §§ 16.21–16.29. In *Touhy*, the Supreme Court recognized the validity of agency regulations governing the internal administration of agency records and responses to subpoenas. *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

*Touhy* and the Housekeeping Statute, however, do not create an independent evidentiary privilege or otherwise authorize federal agencies to withhold evidence absent a recognized privilege grounded in statute, federal common law, or other applicable authority. *See NLRB v. Capitol Fish Co.*, 294 F.2d 868, 874-75 (5th Cir. 1961) (explaining that *Touhy* did not create an executive privilege to withhold evidence); *United States v. Reynolds*, 345 U.S. 1, 9–10 (1953) ("Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers."). Congress likewise expressly limited the Housekeeping Statute, providing that § 301 "does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301.

Although the DOJ may invoke its Touhy regulations in responding to subpoenas, it must nevertheless demonstrate that the withholding of relevant evidence is supported by a recognized privilege or protected interest grounded in

7

law. *See Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 777-78 (9th Cir. 1994) ("Section 301 does not, by its own force, authorize federal agency heads to withhold evidence from federal courts"). Reliance on the Touhy regulations alone is insufficient. *Id*.; 5 U.S.C. § 301.

Although APA review is deferential, the agency must still articulate a reasoned basis for its Touhy determination supported by the administrative record and a rational explanation. *See Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983). Conclusory or categorical refusals unsupported by record-specific analysis are insufficient. Courts in this District have repeatedly rejected Touhy denials based on generalized assertions of burden, privilege, or governmental interests where the agency failed to articulate a rational connection between the facts before it and its refusal to permit discovery. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 198305, at *16–23 (N.D. Fla. Oct. 26, 2020).

Under the APA, a court may compel agency action unlawfully withheld or set aside a denial that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706.

## V.    Argument

### A. The DOJ Touhy Denial is Arbitrary and Capricious Because it Fails to Conduct the Required Analysis and Evidentiary Showing

Under the APA, a court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The APA also provides that a reviewing court must set aside agency action if the agency has acted "without observance of procedure required by law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* §§ 706(2)(C),(D).

Courts applying the APA in the Touhy context have repeatedly rejected conclusory agency refusals unsupported by record-specific analysis. In the 3M Combat Arms Earplug litigation, the Northern District of Florida held that the Department of War acted arbitrarily and capriciously when it relied on generalized assertions of burden and failed to articulate a rational connection between the facts before it and its refusal to permit testimony. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 198305, at *16–23. The court further explained that generalized agency assertions unsupported by specific factual analysis are "insufficient to survive APA review because [they do] not evince any effort by the Department to examine the actual evidence before it." *Id*. at *18–19.[5]

---

[5] *See also In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-53, 2020 U.S. Dist. LEXIS 190078, at *10-13 (N.D. Fla. Oct. 14, 2020) ("*Parker*") (rejecting generalized agency

9

In this case, rather than evaluate Plaintiffs' four narrowly tailored requests or apply the asserted privileges to specific documents or categories of materials, the DOJ denied the requests in their entirety based on generalized references to law enforcement interests, grand jury secrecy, and classified information. *See* ECF No. 98-2. That is not a reasoned decision.

An agency must examine the relevant facts, consider the applicable factors, and articulate a rational connection between those facts and its decision. *State Farm*, 463 U.S. at 43. The DOJ has done none of those things. It has not identified a single document it contends is protected, has not explained how any asserted privilege applies to the specific materials sought, and has not provided any evidentiary support to permit meaningful judicial review. Without such a record, the Court cannot assess the validity of the DOJ's assertions, and the DOJ's decision necessarily fails.

Courts in this District have repeatedly rejected Touhy denials that rely on conclusory assertions or categorical refusals to participate in discovery. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 198305 at *1. Agencies may not avoid compliance with valid subpoenas by invoking broad

_____

assertions concerning burden and governmental disruption as insufficient to justify a Touhy refusal under the APA); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-49, 2020 U.S. Dist LEXIS 187812, at *18-22 (N.D. Fla. Oct. 9, 2020) ("*Schulman*") (finding agency reasoning inadequate where the government relied on broad assertions rather than record-specific analysis tied to the requested testimony); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:20-mc-54, 2020 U.S. Dist. LEXIS 193367, at *10-16 (N.D. Fla. Oct. 19, 2020) ("*Donaldson*") (holding that generalized claims of burden and agency inconvenience were insufficient to sustain a Touhy denial under APA review).

doctrines in the abstract; they must engage in a fact-specific analysis, segregate and produce non-privileged material, and produce a detailed privilege log listing each and every category of document withheld, the claimed privilege on which withholding is based, and facts sufficient to allow both the discovering party and the Court to test the assertions of privilege. *See* Fed. R. Civ. P. 45(e)(2)(A)(ii).

The DOJ's position is especially untenable given its admission during the meet-and-confer that Plaintiffs' requests are relevant, narrowly tailored, and consistent with its own regulations. Having conceded that the requests satisfy the governing standard, the DOJ cannot then refuse to produce any documents without undertaking the analysis those regulations require. Its failure to do so is dispositive.

The DOJ's position is further undermined by the declaration of Investigator Randy Crowder, who states that he attended a public law enforcement conference in Orlando, Florida, known as the "SWAT Round-Up," hosted by the Florida Chapter of the FBI National Academy Associates, Inc., where many of the same categories of information at issue here were publicly presented to hundreds of attendees. *See* Declaration of Randy Crowder dated May 6, 2026, attached hereto as Exhibit B.

According to Investigator Crowder, those presentations included detailed information concerning materials recovered from Al-Shamrani's phone, vetting procedures utilized by the Department of War, and Al-Shamrani's communications and connections with AQAP members. *Id*. These public disclosures substantially

11

undermine the DOJ's contention that all responsive materials remain categorically protected from disclosure under the asserted privileges. At a minimum, they demonstrate that the DOJ's blanket refusal to produce any documents without conducting a document-specific analysis, segregability review, or *in camera* submission is not the product of reasoned decision making.

The DOJ's Touhy determination also failed to meaningfully consider the rights of the victims or balance those rights against the DOJ's desire to withhold information. The Attorney General Guidelines for Victim and Witness Assistance were promulgated by the Department of Justice and apply to both DOJ and FBI personnel. The Guidelines emphasize a victim-centered approach and recognize the Department's obligation to provide assistance and information to victims whenever feasible and appropriate. *See* Attorney General Guidelines for Victim and Witness Assistance (2022 ed.) at 1–4.[6] The Guidelines further recognize that a "strong presumption exists in favor of providing, rather than withholding, assistance and services" to victims. *Id*. at 4. Despite Plaintiffs' status as victims of the Pensacola terrorist attack, the DOJ's Touhy denial does not acknowledge, discuss, or attempt to reconcile these Department policies with its failure to provide any information in

---

[6] The Attorney General Guidelines for Victim and Witness Assistance may be accessed at: www.justice.gov/d9/pages/attachments/2022/10/21/new_ag_guidlines_for_vwa.pdf

this case. That omission further demonstrates the conclusory and arbitrary nature of the agency's decision making.

The DOJ's categorical refusal to produce any materials—coupled with its refusal to provide a declaration, privilege log, or any form of evidentiary support—confirms that its denial is not the product of reasoned decision making. Because the DOJ has failed to examine the requested materials, apply the asserted privileges to the facts of this case, or create a record capable of judicial review, its Touhy determination must be set aside as arbitrary and capricious.

### B. The DOJ Touhy Denial is Arbitrary and Capricious Because it is Contrary to Law

The DOJ's reference to 28 C.F.R. § 16.26 does not end the inquiry. Section 16.26 does not create an independent privilege or otherwise alter the governing standards of discoverability. *See Capitol Fish*, 294 F.2d at 875; *Reynolds,* 345 U.S. at 9-10; *Exxon Shipping*, 34 F.3d at 778. Rather, subsection (a)(2) expressly requires the agency to evaluate disclosure under "the relevant substantive law concerning privilege." In this case that is Rule 45 and federal common law. Subsection (b), on the other hand, identifies categories of information that may warrant protection under internal DOJ policy. It does not itself establish that the information is privileged or legally exempt from disclosure, nor does it relieve the DOJ of its burden to ground any refusal in recognized privilege law. *See Exxon Shipping*, 34 F.3d at 778; 5 U.S.C. § 301.

13

This distinction is critical. The Department cannot substitute a conclusory invocation of subsection (b) for the showing required by subsection (a)(2) and governing law. A determination that requested materials fall within a category such as "investigatory records" or "classified information" does not, standing alone, establish a valid basis for withholding in response to a subpoena. Touhy regulations are procedural and allocative. *See Capitol Fish*, 294 F.2d at 875. They govern how the agency decides whether to comply, not whether the materials are legally protected from disclosure. *Touhy*, 340 U.S. at 462. Accordingly, the Department must still demonstrate that a recognized privilege applies to avoid disclosure. *Exxon Shipping*, 34 F.3d at 778; 5 U.S.C. § 301.

Under the Administrative Procedure Act, the Department's decision must therefore reflect both a correct understanding of the governing legal standards and a reasoned application of those standards to the facts. A refusal that rests solely on the assertion that the requested materials fall within § 16.26(b) is not in accordance with law and is arbitrary and capricious.

### C. The DOJ's Asserted Privileges Fail as a Matter of Law

The DOJ's asserted privileges likewise do not justify its blanket refusal to produce any responsive materials because the DOJ has failed to make the particularized factual showing required under governing law. Rather than identify specific documents, explain the basis for withholding particular categories of

14

information, or provide any evidentiary support, the DOJ relies entirely on generalized and categorical assertions of "law enforcement privilege," "grand jury secrecy," and "classified information." ECF No. 98-2. That is insufficient.

First, the law enforcement privilege is qualified, not absolute, and requires a particularized showing that disclosure would cause a concrete harm to legitimate law enforcement interests. *See JTR Enters., LLC v. Unknown Qty. of Colombian Emeralds*, 297 F.R.D. 522, 529 (S.D. Fla. 2013) ("Under federal common law, there is a qualified privilege which protects disclosure of information contained in criminal investigations."); *FEC v. Rivera*, 335 F.R.D. 541, 547 (S.D. Fla. 2020) (explaining that the privilege exists to prevent disclosure of investigative techniques, confidential sources, or interference with enforcement proceedings). Courts applying the privilege require a document-specific analysis and balancing of interests, not conclusory invocations of an "ongoing investigation." *See In re Dep't of Investigation of City of N.Y.*, 856 F.2d 481, 484 (2d Cir. 1988) ("The law enforcement privilege is not absolute.").

Here, the DOJ has provided no declaration, no explanation of any pending enforcement proceeding, no description of any investigative technique at issue, and no basis for concluding that disclosure of all responsive factual materials would interfere with law enforcement activities more than six years after the attack. There is also no record evidence substantiating the assertion that there is an "ongoing

investigation" or demonstrating how Plaintiffs' discrete factual requests could harm that investigation. The DOJ's reasoning is arbitrary and capricious under the APA.

Second, the DOJ's generalized reference to Rule 6(e) is equally insufficient. Rule 6(e) protects only matters "occurring before the grand jury"; it does not automatically shield all materials reviewed during a criminal investigation. *See United States v. Dynavac, Inc.*, 6 F.3d 1407, 1411–14 (9th Cir. 1993) (explaining that Rule 6(e) does not protect documents created independently of the grand jury process merely because they were subpoenaed or reviewed by a grand jury). Underlying factual materials, preexisting records, communications with third parties, and independently obtained evidence do not become categorically exempt from disclosure simply because they were at some point reviewed in connection with a grand jury investigation. Yet the DOJ has made no attempt to distinguish between protected grand jury matters and non-protected factual materials, nor has it conducted any segregability analysis whatsoever. The DOJ can further seek an order from the Court authorizing it to disclose grand jury material as it has done in the 9/11 terrorism cases.

Third, the DOJ's conclusory reference to "classified information" also fails to satisfy the requirements of federal privilege law. The DOJ has not formally invoked the state secrets privilege, has not submitted a declaration from the head of the relevant agency, and has not provided any evidentiary basis permitting judicial

16

review of its assertions. *See Reynolds*, 345 U.S. at 7–8 (requiring formal invocation of the privilege by the head of the department with control over the matter after personal consideration). Moreover, classification status alone does not establish that all responsive materials are exempt from disclosure in civil litigation, particularly where the government refuses to conduct any segregability review or submit materials for *in camera* inspection. The DOJ's refusal even to consider those ordinary procedural safeguards further demonstrates that its denial was not the product of reasoned decision making.

Moreover, the FBI shared at least some of this information with third parties during its SWAT Roundup conference. Ex. B, Crowder Decl. There is no indication that conference participants were required to possess security clearances. *Id*. This substantially undermines any categorical assertion that all responsive materials are classified or otherwise incapable of disclosure and demonstrates, at a minimum, that DOJ was required to conduct a document-specific analysis rather than issue a blanket refusal.

Accordingly, the DOJ has not established that all responsive materials are privileged, nor has it demonstrated that non-privileged factual information cannot be segregated and produced. Its categorical refusal to produce any documents, unsupported by declarations, privilege logs, or document-specific analysis, falls far short of what the APA and governing privilege law require.

**D. The DOJ Has Waived Any Asserted Privilege Through its Public Disclosures**

Even if the privileges invoked by the DOJ could otherwise apply (which they do not) the government's own public disclosures have waived any such protections. It is well established that a party cannot selectively disclose favorable information while withholding the underlying materials based on privilege. Where the government has placed the substance of information into the public domain, it cannot then invoke privilege to shield the same subject matter from disclosure.

Here, the DOJ and the FBI have publicly disclosed detailed factual findings regarding the very issues on which Plaintiffs seek discovery. Following the attack, the government publicly announced that Al-Shamrani had been radicalized prior to entering the United States, had expressed anti-American and jihadist views through social media, and had communicated with al-Qaeda in the Arabian Peninsula ("AQAP"). ECF No. 47-2, at 2-3; ECF No. 47-3, at 1-2. Those findings were based on a review of Al-Shamrani's digital devices, communications, and online activity (ECF No. 47-2, at 2-3; ECF No. 47-3, at 1-2); the very same categories of factual materials Plaintiffs now seek through their narrowly tailored discovery requests. Ex. A., DOJ Subpoena. Having publicly announced these findings, the government cannot refuse to produce the underlying evidence that supports them.

The parties' reliance on those same public statements in this litigation further underscores the waiver. Those disclosures have been cited by the parties, including

18

Defendants, in support of jurisdictional arguments. The DOJ cannot permit the use of its public factual findings when they serve its interests, while simultaneously denying Plaintiffs access to the underlying materials necessary to test, contextualize, and challenge those findings. Such selective disclosure is incompatible with the privileges the DOJ seeks to invoke and precludes their application.

The waiver is reinforced by additional disclosures made through FBI presentations and seminars provided to third parties, including current and former law enforcement personnel. Through these forums, the government has shared information concerning Al-Shamrani's radicalization, communications, and activities. The DOJ cannot disclose information to third parties, whether publicly or in controlled settings, and then maintain that the same information is categorically protected from disclosure in civil litigation brought by the victims of the attack.

In short, the DOJ has placed the substance of the requested information into the public domain and cannot now invoke privilege to prevent its disclosure. Any privileges that might otherwise apply have therefore been waived, providing an independent basis to deny the Motion to Quash and compel production of the requested materials.

## VI.    CONCLUSION

For all the foregoing reasons, this Court should deny the United States' Motion to Quash and should order the Department of Justice to comply with the

subpoena and Touhy letter and produce all responsive documents, as well as a detailed privilege log setting forth the legal and factual basis for each and every document withheld, within ten days of the Court's order.

Dated: May 7, 2026.                                   Respectfully submitted,


                                                     /s/ Matthew S. Mokwa
                                                     Matthew S. Mokwa, Esq. (FL#47761)
                                                     **THE MAHER LAW FIRM, P.A.**
                                                     398 W. Morse Blvd., Suite 200
                                                     Winter Park, Florida 32789
                                                     Phone: (407) 839-0866
                                                     Fax: (407) 425-7958
                                                     mmokwa@maherlawfirm.com


                                                     Filed on Behalf of All Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2026 and in compliance with L.R. 5.1(F), I, Matthew S. Mokwa, electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system which sends notice to all parties or counsel of record that have entered appearances in this action.

                                                     /s/ Matthew S. Mokwa
                                                     Matthew S. Mokwa, Esq.