UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BENJAMIN WATSON, JR., et al.,
    Plaintiffs,

v.                                                    Case No.: 3:21cv329/MCR/ZCB

KINGDOM OF SAUDI ARABIA,
    Defendant.
_____/

## ORDER

This case arises from a terrorist attack at Naval Air Station Pensacola on December 6, 2019.  The terrorist, Mohammed Al-Shamrani, was a member of the Royal Saudi Air Force.  Plaintiffs are survivors and representatives of deceased victims of the attack.  They sued Defendant Kingdom of Saudi Arabia, raising a variety of claims arising out of the attack.  This Court dismissed those claims under the Foreign Sovereign Immunities Act.  (Doc. 72).  Plaintiffs appealed, and the Eleventh Circuit remanded the case for further proceedings on one claim.  (Doc. 80). Plaintiffs have been granted jurisdictional discovery on that claim. (Doc. 90).

1

As part of the jurisdictional discovery, Plaintiffs served a *Touhy* request and subpoena on the U.S. Department of Justice (the "Department"), seeking the following materials:

- Documents that reflect the factual basis for, or otherwise support or relate to, the public statements by the FBI and Department of Justice that, based on a review of Al-Shamrani's electronic devices: (a) he had been radicalized since 2015; (b) he had joined the Royal Saudi Air Force to carry out a special operation; and (c) he had been communicating with Al-Qaeda in the Arabian Peninsula (AQAP) prior to entering the United States.

- Documents that reflect the factual basis for, or otherwise support or relate to, the public statements by the FBI and Department of Justice that: (a) Al-Shamrani was motivated by jihadist ideology; and (b) 17 members of the Saudi military who were training in the United States possessed jihadi or anti-American content.

- Documents provided by, or reflecting information provided by, the Kingdom of Saudi Arabia to the FBI or Department of Justice concerning Al-Shamrani's radicalization, extremist beliefs, or associations.

- Documents reviewed, relied upon, or requested by the Department of Justice in investigating Al-Shamrani's radicalization, including but not limited to materials obtained from foreign governments, digital devices, social media accounts, or screening and vetting records.

(Doc. 98-1 at 11).

The Department subsequently denied Plaintiffs' *Touhy* request and moved to quash the subpoena. (Docs. 98, 98-2). Plaintiffs responded in opposition, and the Department replied. (Docs. 102, 106). The Court also

held an *in camera* hearing during which the Department proffered evidence in support of its denial of the *Touhy* request.  (Docs. 107, 113).

## I.

Under the federal "Housekeeping Statute," 5 U.S.C. § 301, executive branch agencies may issue regulations governing the testimony of agency employees and the disclosure of agency information.  The Supreme Court upheld such regulations in *United States ex. rel. Touhy v. Ragen,* 340 U.S. 462 (1951).  In the years since, agency regulations promulgated under the Housekeeping Statute have come to be called "an agency's *Touhy* regulations."  *Westchester Gen. Hosp., Inc. v. Dep't of Health & Human Servs.,* 443 F. App'x 407, 409 n.1 (11th Cir. 2011) (cleaned up).

The Department of Justice has promulgated its own *Touhy* regulations, and they can be found at 28 C.F.R. § 16.21 *et seq.*  These regulations govern "with respect to the production or disclosure of any material contained in the files of the Department, any information relating to material contained in the files of the Department, or any information acquired by any person while such person was an employee of the Department . . . ."  28 C.F.R. § 16.21(a).  The Eleventh Circuit has recognized that the Department's regulations "are valid" and can serve

as a basis for not complying with a subpoena. *United States v. Blair*, 174 F.4th 1309, 1318 (11th Cir. 2026).

To obtain testimony or information from the Department, "a party must file a request pursuant to the agency's regulations[.]" *Cabral v. U.S. Dep't of Justice*, 587 F.3d 13, 22-23 (1st Cir. 2009). Such requests are referred to as "*Touhy* requests." *Id.* at 22-23. Under the Department's regulations, a *Touhy* request for disclosure of information must be supported by "a summary of the information sought and its relevance to the proceeding." 28 C.F.R. § 16.22(d). Once the request is received, it is referred to the appropriate Department official—here, the U.S. Attorney for the Northern District of Florida—for a disclosure determination. 28 C.F.R. § 16.22(a), (b).

In making the disclosure determination, the Department official must consider if disclosure is warranted under (1) the applicable rules of procedure, and (2) the relevant substantive law regarding privilege. 28 C.F.R. §§ 16.24(b)(2)-(3), 16.26(a)-(b). Additionally, the regulations prohibit disclosure if doing so would (1) violate a statute or rule of procedure, "such as the grand jury secrecy rule"; (2) violate a regulation; (3) reveal classified information; (4) reveal a confidential source or informant; (5) "reveal investigatory records compiled for law enforcement

4

purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired"; or (6) reveal trade secret information.  28 C.F.R. § 16.26(b)(1)-(6).  If the official determines that disclosure is unwarranted under the regulations, then the *Touhy* request will be denied.

The denial of a *Touhy* request is "agency action" that is subject to judicial review under the Administrative Procedure Act (APA). *Westchester Gen. Hosp.*, 443 F. App'x at 410.  This means that a reviewing court "may only set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Conservation All. of St. Lucie Cnty., Inc. v. U.S. Dep't of Transportation*, 847 F.3d 1309, 1320 (11th Cir. 2017) (cleaned up).  The arbitrary and capricious standard of review is "exceedingly deferential" and "examines whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Westchester Gen. Hosp.*, 443 F. App'x at 410 (cleaned up).

Under the arbitrary and capricious standard, a "reviewing court is not authorized to substitute its judgment for that of the agency concerning the wisdom or prudence of the proposed action." *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 542 (11th Cir. 1996).  A party

attempting to show that an agency action was arbitrary and capricious has a steep hill to climb because "[a]long the standard of review continuum," this standard gives a reviewing court "the *least* latitude in finding grounds for reversal[.]"  *Id.* at 541-42; *see also Legal Env't Assistance Found. v. U.S. E.P.A.*, 276 F.3d 1253, 1265 (11th Cir. 2001) (stating that "a party seeking to have a court declare an agency action to be arbitrary and capricious carries a heavy burden indeed" (cleaned up)).

## II.

Here, the responsible Department official denied Plaintiffs' *Touhy* request. (Doc. 98-2). The Department's denial letter stated that disclosure was unwarranted under 28 C.F.R. § 16.26(a)(2) because of the law enforcement investigatory privilege.  (*Id.* at 2).  The denial letter further stated that disclosure was prohibited under 28 C.F.R. § 16.26(b)(1), (3), and (5), because disclosure would violate grand jury secrecy, disclose classified information, and reveal "investigatory records compiled for [] law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." (*Id.* at 2-3).  After sending Plaintiffs the denial letter, the Department filed the current motion to quash the subpoena that accompanied Plaintiffs'

6

*Touhy* request.  (Doc. 98).  In its motion and reply, the Department argues that its denial of the *Touhy* request was not arbitrary and capricious.  (Docs. 98, 106).  Plaintiffs disagree.  (Doc. 102).

As explained above, the issue before the Court today is not whether the Department should have denied the *Touhy* request.  Instead, the narrow question the Court must answer is:  Was the Department's denial of Plaintiffs' *Touhy* request so flawed as to warrant the "arbitrary and capricious" label?  Having carefully considered the arguments of counsel and the information in the record (including the evidence provided during the *in camera* hearing), the answer to the question is "no."  The Department's denial was not arbitrary and capricious, an abuse of discretion, or otherwise contrary to law.  Instead, the Department's determination was based on reasonable consideration of the relevant factors.

## A.

The Department concluded under 28 C.F.R. § 16.26(a)(2) that disclosing the information sought by Plaintiffs was protected by the law enforcement privilege.  Under 28 C.F.R. § 16.26(a)(2), before making a disclosure, the Department is required to consider if "disclosure is appropriate under the relevant substantive law concerning privilege."

One privilege recognized by the substantive law is the law enforcement investigative privilege, which is a qualified privileged originating in federal common law. *Callaway v. Adcock*, No. 2:20cv598, 2021 WL 8316453, at *1 (M.D. Ala. Feb. 11, 2021). This privilege "is based primarily on the harm to law enforcement efforts which might arise from the public disclosure of investigatory files." *Id.* (cleaned up). And it is designed "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *Id.* This privilege also recognizes that "in today's times the compelled production of government documents could impact highly sensitive matters of national security." *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 569 (5th Cir. 2006).

The information before the Court shows that the terrorist attack led to an extensive and wide-ranging law enforcement investigation. That investigation remains open. Information gathered during the investigation relates to sensitive matters of national security. The Department has reasonably concluded that potential harm to law enforcement efforts might arise from disclosing the information

requested by Plaintiffs. After careful consideration, the Court finds that the Department's reliance on the law enforcement privilege was reasonable, based on consideration of relevant factors, and not a clear error of judgment. "In short, given the breadth of the law enforcement privilege and the [information] sought by [Plaintiffs], the Court cannot conclude that DOJ's decision to" deny the *Touhy* request "was a clear error of judgment." *Pitts v. United States*, ---F. Supp. 3d---, 2026 WL 915679, at *5 (N.D. Ga. Mar. 26, 2026). Thus, Plaintiffs have not succeeded in showing that the Department acted arbitrarily and capriciously by denying the *Touhy* request under 28 C.F.R. § 16.26(a)(2) based on the law enforcement investigative privilege.[1]

### B.

The same is true with respect to the Department's decision to deny disclosure under 28 C.F.R. § 16.26(b)(1), (3), and (5). Under 28 C.F.R. § 16.26(b), a Department official "will not" disclose information if doing so would (1) "violate . . . a rule of procedure, such as the grand jury secrecy

---

[1] Because the Department did not act arbitrarily and capriciously by denying the *Touhy* request based on the law enforcement investigative privilege under 28 C.F.R. § 16.26(a)(2), it is unnecessary to discuss the Department's reliance on the factors set forth in 28 C.F.R. § 16.26(b)(1)-(6). Nonetheless, the Court will discuss those provisions in the interest of completeness and because they have been discussed by the parties.

rule, F.R.Cr.P. 6(e), . . . (3) . . . reveal classified information, unless appropriately declassified by the originating agency, . . . [or] (5) . . . reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." Based on the information before the Court, the Department did not act arbitrarily and capriciously by denying Plaintiffs' *Touhy* request for those reasons.[2]

---

[2] Although an agency cannot rely on its *Touhy* regulations "to establish authority in the executive departments to determine whether certain papers and records are privileged," *N.L.R.B. v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961), that is not what happened here. The Department, in § 16.26(b)(1)-(6), has not created a new privilege nor has it promulgated substantive rules authorizing nondisclosure. Instead, each of the provisions in (b)(1)-(6) refers to a substantive rule, existing outside the *Touhy* regulations, that justifies nondisclosure. For example, § 16.26(b)(1) refers to Rule 6(e) of the Federal Rules of Criminal Procedure, which makes grand jury materials secret. And § 16.26(b)(4) refers to the informant's privilege (recognized in *Roviaro v. United States*, 353 U.S. 53 (1957)), which prohibits disclosure of information relating to a confidential informant. Similarly, § 16.26(b)(6) refers to the law of trade secrets, which prevents the disclosure of protected trade secret information. The *Touhy* regulations did not independently create the legal basis for nondisclosure on any of the grounds listed in § 16.26(b); rather, the regulations simply require the Department to consider those existing legal rules and to not disclose information covered by any of those existing rules. And this Court is today reviewing whether the Department acted arbitrarily and capriciously by finding that nondisclosure would run afoul of one of those existing rules. *See St. Vincent Med. Group, Inc. v. U.S. Dep't of Justice*, 71 F.4th 1073, 1075-76

The "long-established policy" of grand jury secrecy has been codified in Rule 6(e). *Pitch v. United States*, 953 F.3d 1226, 1232 (11th Cir. 2020) (en banc). Rule 6(e) "mandates that various persons who participate before the grand jury," including Department of Justice attorneys, "must not disclose a matter occurring before the grand jury . . . ." *Id.* at 1234. The secrecy requirement applies "not only to information drawn from transcripts of grand jury proceedings, but also to anything which may tend to reveal what transpired before the grand jury." *In re Grand Jury Investigation*, 610 F.2d 202, 216 (5th Cir. 1980) (cleaned up).[3]

Shortly after the terrorist attack occurred, a federal grand jury investigation was opened. That extensive and wide-ranging grand jury investigation remains open.[4] In their *Touhy* request, Plaintiffs requested

_____

(7th Cir. 2023) (finding the Department did not act arbitrarily and capriciously by relying on § 16.26(b)(5) to deny a *Touhy* request); *see also Pitts*, 2026 WL 915679, at *6 (same); *In re September 11 Litigation*, 621 F. Supp. 2d 131, 145 (S.D.N.Y. 2009) (citing 28 C.F.R. § 16.26(b) and stating that the "government's decision that the depositions requested are likely to interfere with its continuing investigation and compromise national security is reasonable and appropriate, not arbitrary and capricious").

[3] The Eleventh Circuit has "adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981." *United States v. Spearman*, 178 F.4th 1295, 1307 n.7 (11th Cir. 2026).

[4] In any event, the grand jury secrecy rule does not require an investigation to be open or ongoing. The secrecy rule applies "even *after*

documents related to the investigation of the terrorist, his radicalization, his communications with others, and the contents of his digital devices and accounts. (Doc. 98-1 at 3-11). That is the very type of information that the grand jury received as part of its investigation into the terrorist attack.[5]

With respect to the issue of classified information, the determination of whether information is classified falls within the purview of the Executive Branch and not the Judicial Branch. *United States v. Collins*, 720 F.2d 1195, 1198 n.2 (11th Cir. 1983). Thus, it is not this Court's role to make a classification decision, or to second-guess the Executive Branch's classification decision. *See United States v. Moussaoui*, 65 F. App'x 881, 887 n.5 (4th Cir. 2003) (refusing to review and reject classification decisions made by the Executive Branch). Here, the Department has informed the Court (without divulging the classified information itself) that compliance with Plaintiffs' *Touhy* request would

---

the grand jury has concluded its operations." *United States v. Aisenberg*, 358 F.3d 1327, 1348 (11th Cir. 2004).

[5] To the extent Plaintiffs have argued that the Department improperly relied on grand jury secrecy because some of the information sought by Plaintiffs has been publicly disclosed by other people, that argument is unpersuasive. *See Aisenberg*, 358 F.3d at 1351 (rejecting argument that grand jury secrecy fails to apply where "much of this information is already public through other means").

reveal classified information, including classified investigative methods, procedures, and tools. Given the nature of the attack (a terrorist act by a member of a foreign military on U.S. soil) and the extensive scope of the investigation, the Court finds a rational basis for the Department's conclusion that disclosure of the requested information would reveal classified information. *See Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008) ("The court's role is to ensure that the agency came to a rational conclusion, not to conduct its own investigation and substitute its own judgment for the administrative agency's decision." (cleaned up)).

Similarly, it was rational for the Department to conclude under 28 C.F.R. § 16.26(b)(5) that complying with Plaintiffs' request would disclose law enforcement investigatory records and would interfere with enforcement proceedings or disclose and impair investigative techniques and procedures. As mentioned above, the terrorist attack resulted in an extensive and wide-ranging law enforcement investigation that remains open. The information before the Court shows that the Department had a rational basis for concluding that complying with Plaintiffs' *Touhy* request would result in the disclosure of law enforcement records, as well

13

as the disclosure and impairment of investigative techniques and procedures.

At bottom, the Court is satisfied that the Department's denial of Plaintiffs' *Touhy* request has a sufficient evidentiary basis. And the Court is satisfied that in making the denial determination, the Department considered relevant factors, acted rationally, and did not make a "clear error of judgment." *Conservation All.*, 847 F.3d at 1320 ("[A court's] inquiry is limited by law to whether the agency's decision was based on a consideration of the relevant factors and, ultimately, whether it made a clear error of judgment.").

## III.

Attempting to avoid the conclusion that the Department's decision was not arbitrary and capricious, Plaintiffs have pointed to several opinions arising out of the 3M Combat Arms MDL. (*See* Doc. 102 at 8, 10). But the 3M opinions Plaintiffs cite (i.e., *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, 2020 WL 6274824 (N.D. Fla. Oct. 26, 2020)), are distinguishable from the current situation.

14

The 3M opinions involved *Touhy* denials by the Department of Defense[6] based on procedural objections such as undue burden and lack of reasonable time to comply.  2020 WL 6274824, at *4.  Those are vastly different reasons to deny a *Touhy* request than the reasons articulated by the Department of Justice in today's case.  Here, the *Touhy* denial was focused on the type of information requested, legal rules implicated by the *Touhy* request, and the potential harm that could result from disclosure.  It was not based on a procedural objection or a concern regarding the burden Department of Justice employees would be required to bear to comply with the subpoena.  Because this is not a case involving a vague invocation of the "too busy" excuse that "invites an impermissible blanket ban on all requests for testimony," *id.* at *5 (cleaned up), the 3M opinions are distinguishable and do not support Plaintiffs' argument in this case.

---

[6] The Department of Defense has different *Touhy* regulations than the Department of Justice.

15

## IV.

For the reasons above, the Department of Justice's motion to quash (Doc. 98) is **GRANTED**, and Plaintiffs' subpoena (Doc. 98-1) is **QUASHED**.

**SO ORDERED** this 15th day of July 2026.

/s/ *Zachary C. Bolitho*

Zachary C. Bolitho
United States Magistrate Judge

16