UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | | |
|---|---|---|
| BENJAMIN WATSON, JR., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 3:21-cv-00329-MCR-ZCB |
| v. | ) | |
| | ) | |
| KINGDOM OF SAUDI ARABIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER
GRANTING THE UNITED STATES' MOTION TO QUASH (DOC. 120)**

Pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A), Plaintiffs respectfully object to the Magistrate Judge's July 15, 2026 Order (Doc. 120), which granted the United States' motion to quash (Doc. 98) and quashed Plaintiffs' subpoena to the Department of Justice (the "Department") (Doc. 98-1).

**INTRODUCTION**

This case arises from the December 6, 2019 terrorist attack at Naval Air Station Pensacola, and it returns to this Court on the Eleventh Circuit's mandate to develop the jurisdictional facts concerning what the Kingdom of Saudi Arabia knew about its officer's radicalization before sending him to the United States. The Department of Justice has refused to produce a single document to the victims of

1

that attack. The Magistrate Judge upheld that refusal based on the Department's *Touhy* regulations. But those regulations do not themselves authorize withholding documents. They prescribe only the Department's internal procedures for deciding whether to disclose information. They do not create evidentiary privileges, alter the substantive law governing those privileges, shift the government's burden of proof, or excuse compliance with the Federal Rules of Civil Procedure. (Doc. 120 at 10, n.2).

Although the Administrative Procedure Act ("APA") supplies the standard of judicial review, it does not alter the substantive law governing the issues presented for review. Even under the APA, a reviewing court must determine whether the agency's withholding decision was made in accordance with the substantive legal requirements governing each privilege invoked. That review was impossible here because the Department never certified or produced the administrative record. The final administrative decision (a three-page denial letter) contains none of the information required to evaluate the asserted privileges. (Doc. 98-2). There is no privilege log, no declarations, no document-specific analysis, and no factual findings.

Instead, the factual basis for the Department's denial was supplied after the fact, through an ex parte, in camera proceeding, the substance of which remains entirely unavailable to Plaintiffs. That hearing lasted only 36 minutes and was

2

attended solely by litigation counsel for the Department. The Order expressly relied on "the evidence provided during the in camera hearing" to support each of its dispositive findings. (Doc. 120 at 7).

The Order should be set aside because it rests on three fundamental legal errors. First, the Magistrate Judge upheld the Department's withholding decision based on evidence presented for the first time during an ex parte proceeding rather than on the agency's administrative record. Second, the Order upheld the Department's privilege assertions without determining whether they satisfied the governing substantive law. Third, the Magistrate Judge upheld the Department's categorical withholding without requiring a privilege log, a document-specific showing of the privileges asserted, or a determination of whether reasonably non-privileged material could be produced.

As explained below, those errors infected each of the Magistrate Judge's rulings and require that the Order be set aside.

## BACKGROUND

The Eleventh Circuit remanded this case for one purpose: to develop the jurisdictional facts concerning what the Kingdom of Saudi Arabia knew or should have known about Mohammed Al-Shamrani's radicalization before sending him to the United States. *Watson v. Kingdom of Saudi Arabia*, 159 F.4th 1234, 1274 (11th Cir. 2025). In doing so, the Eleventh Circuit held that the Amended Complaint

3

supported the reasonable inference that the Kingdom "knew or should have known that Al-Shamrani was a 'ticking time bomb.'" *Id.*

Consistent with that mandate, this Court authorized limited jurisdictional discovery to "verify[] and confirm[]" Plaintiffs' allegations concerning Saudi Arabia's "potential knowledge and/or conscious disregard" of Al-Shamrani's radicalization, recognizing that the critical evidence lies "peculiarly within [Saudi Arabia's] possession or the possession of United States government agencies." (Doc. 90 at 8-9).

Plaintiffs served the Department with a *Touhy* request and Rule 45 subpoena seeking **four** discrete categories of factual documents, each tied to the Department's own public statements about the attack and to the issues identified for jurisdictional discovery. (Doc. 98-1 at 11; Doc. 120 at 2). The request sought only factual materials, invited the Department to address any legitimate confidentiality concerns through negotiation, redaction, staged production, or an appropriate protective order, and offered to confer regarding privilege issues and investigative sensitivities. (Doc. 98-1 at 2-3).

On April 21, 2026, the Department denied the request in a three-page letter asserting four grounds: the law enforcement investigatory privilege, 28 C.F.R. § 16.26(a)(2); grand jury secrecy, § 16.26(b)(1); classified information, § 16.26(b)(3); and investigatory records, § 16.26(b)(5). (Doc. 98-2). The letter asserted, without

supporting facts, that "the investigation is ongoing" and that the requested information "contains classified information." It included no privilege log, no declaration, no description of the investigation's status or scope, no segregability analysis, and no reasoned explanation because, as the Department stated, "it goes without saying that DOJ cannot provide additional reasoning for its decision." (*Id*. at 2-3).

When Plaintiffs challenged the denial, the government asked to "present further information to the Court in camera and under seal." (Doc. 106 at 13). The Magistrate Judge convened an ex parte, in camera hearing attended only by government counsel. (Docs. 107, 113). The hearing lasted approximately thirty-six minutes. (Doc. 113). Neither the Order setting the hearing nor the Order granting the motion identifies the evidence presented, and no transcript, summary, or other substitute has been provided to Plaintiffs.

The Magistrate Judge upheld the denial, relying expressly on "the evidence provided during the in camera hearing" to find that the criminal investigation remains open, that a grand jury investigation remains open, and that disclosure would reveal classified information and investigative methods. (Doc. 120 at 5, 7-13).

**STANDARD OF REVIEW**

Rule 72(a) requires a district judge to modify or set aside any portion of a magistrate judge's order on a nondispositive matter that "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Factual findings are reviewed for clear error; legal conclusions are reviewed de novo under the "contrary to law" prong. *See PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, No. 3:23-cv-10385-TKW-ZCB, Doc. 155, at 4 & n.1 (N.D. Fla. Nov. 20, 2024); *Illoominate Media, Inc. v. CAIR Fla., Inc.*, 2022 U.S. App. LEXIS 27435, at 5 (11th Cir. Sept. 30, 2022).

**OBJECTION I: The Order Sustains the Department's Denial on Post Hoc, Extra-Record Evidence That the APA Forbids.**

The Order reviews the Department's *Touhy* denial under the APA's arbitrary-and-capricious standard. (Doc. 120 at 5-6). Plaintiffs accept that framework for purposes of these objections.[1]

### A.    APA review is confined to the administrative record and the agency's contemporaneous reasoning.

"[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *see also Am. Bioscience, Inc. v. Thompson*,

---

[1] Plaintiffs preserve their position that Rule 45 and federal common law, not the APA, govern a motion to quash predicated on a *Touhy* denial. *See infra* Objection V.

269 F.3d 1077, 1083 (D.C. Cir. 2001) (explaining that under the APA, the reviewing court "sits as an appellate tribunal").

Agency action "cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained," *SEC v. Chenery Corp.*, 318 U.S. 80, 94-95 (1943). Moreover, judicial review may not rest on "post hoc rationalizations" or "convenient litigating position[s]." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 23-24 (2020). The agency itself must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up).

Consistent with *State Farm*, an agency "must explain why it chose to do what it did" and that "conclusory statements will not do; an agency's statement must be one of reasoning." *Amerijet Int'l, Inc. v. U.S. Dep't of Homeland Sec.*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (internal quotation marks and citations omitted); accord *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) ("[C]onclusory statements do not suffice to explain [an agency's] decision); *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 562 (D.C. Cir. 2010) ("We do not defer to the agency's conclusory or unsupported suppositions.").

**B.    The Department's decision contains conclusions, not facts.**

The agency action under review is the April 21, 2026 denial letter. (Doc. 98-2). The letter asserts that "the investigation is ongoing," but states no facts about the investigation's status, scope, or subject matter and offers no explanation of how disclosure would interfere with it. It invokes "the grand jury secrecy rule" but never states that any grand jury proceeding exists or ever existed. It asserts that the information sought "contains classified information," but does not state that all responsive material is classified, identify any category of classified material, or describe any segregability review. It does not analyze Plaintiffs' specific requests, address the jurisdictional discovery authorized by the Eleventh Circuit, or acknowledge the confidentiality accommodations Plaintiffs offered. And it expressly declines to provide any additional reasoning. (*Id.* at 3). A decision that fails to cite any supporting facts cannot possibly articulate the rational connection between the facts found and the choice made that the APA requires. *See State Farm*, 463 U.S. at 43.

**C.    The ex parte proceeding supplied the missing factual basis.**

Rather than defend the letter on its own terms, the government asked for leave to "present further information to the Court in camera and under seal." (Doc. 106 at 13). That request necessarily acknowledged that the Department's written determination did not contain the factual basis on which it sought to have the Court

uphold the agency's decision. The Court granted the request (Doc. 107), conducted a thirty-six-minute ex parte hearing (Doc. 113), and relied upon it. (Doc. 120). The contrast between the Department's decision and the Court's Order is stark:

| April 21, 2026 Touhy Denial (Doc. 98-2) | July 15, 2026 Order (Doc. 120) |
|---|---|
| Conclusory assertion that "the investigation is ongoing." No facts regarding its status or scope were presented. | Findings that an "extensive and wide-ranging law enforcement investigation" "remains open" and relates to "sensitive matters of national security." (Doc. 120 at 8). |
| Invocation of "the grand jury secrecy rule." No statement that any grand jury proceeding exists or ever existed. | Finding that "a federal grand jury investigation was opened" "[s]hortly after the terrorist attack" and "remains open." (Doc. 120 at 11). |
| Assertion that the information sought "contains classified information." No scope or segregability review and no declaration by the head of the agency. | Finding, based on what "the Department has informed the Court," that compliance "would reveal classified information, including classified investigative methods, procedures, and tools" (Doc. 120 at 12–13). |

Every factual finding in the right-hand column derives from the ex parte proceeding.

This case bears no resemblance to decisions permitting post-decision submissions that merely authenticate an agency's contemporaneous record. In *Ardila Olivares v. Transportation Security Administration*, the D.C. Circuit considered a post-decision declaration only because it authenticated contemporaneous internal memoranda, confirmed those materials were the actual basis for the decision, and contained "no new rationalizations," serving merely to "illuminate" the existing record. 819 F.3d 454, 462 (D.C. Cir. 2016). Here, the Department identified no

contemporaneous record, submitted no declaration from the deciding official, and never represented that the ex parte presentation reflected the agency's actual contemporaneous reasoning.

Moreover, the Order does not state that the Court reviewed the classified documents or other underlying materials. To the contrary, it states that the Department informed the Court, "without divulging the classified information itself," that compliance with the *Touhy* request would reveal classified information. (Doc. 120 at 12). Thus, the Order does not disclose whether the Court reviewed any underlying evidentiary materials or instead simply accepted the Department's representations concerning those materials.

*Kerr v. United States District Court*, 426 U.S. 394 (1976), does not authorize what occurred. *Kerr* was a discovery case under the Federal Rules; it approved in camera inspection of the disputed documents themselves as a means of evaluating an asserted privilege while preserving confidentiality. *Id.* at 405-06. Nothing in *Kerr* addresses the scope of APA review, and nothing in the record indicates that any responsive documents were examined here. An ex parte attorney proffer asks the Court to accept counsel's characterization of facts outside the administrative record; in camera inspection permits the Court to evaluate the evidence itself. *Kerr* approved the second procedure, not the first.

Plaintiffs, moreover, had no opportunity to examine, assess, or respond to the factual assertions that became dispositive of their discovery rights. Because the Order rests on factual matters first presented during the government's ex parte litigation presentation rather than on the Department's contemporaneous determination, it exceeds the permissible scope of APA review and is contrary to law.

**OBJECTION II: The Order Is Contrary to Law Because It Accepted Each Asserted Ground for Withholding Without Correctly Applying the Governing Substantive Law.**

The APA requires courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Department's regulations expressly incorporate "the relevant substantive law concerning privilege" into its agency determination, 28 C.F.R. § 16.26(a)(2). In addition, the Order holds that the § 16.26(b) factors are lawful precisely because each "refers to a substantive rule, existing outside the Touhy regulations." (Doc. 120 at 10 n.2). It follows from the Order's own reasoning that a denial resting on a misapplication of the substantive law is not "in accordance with law." Binding precedent forecloses any other view. The *Touhy* regime does not "establish authority in the executive departments to determine whether certain papers and records are privileged," *NLRB v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961), and "[j]udicial control over the evidence in a case cannot be

abdicated to the caprice of executive officers." *United States v. Reynolds*, 345 U.S. 1, 9–10 (1953).

Whether a privilege applies is a question of law governed by the applicable substantive privilege doctrine.

### A.    Law Enforcement Privilege.

The Order sustains the Department's invocation of the law enforcement privilege without applying the governing substantive law of that privilege. Because 28 C.F.R. § 16.26(a)(2) incorporates the applicable substantive law, that omission renders the Department's decision and the Order affirming it contrary to law. The law enforcement privilege is qualified, not absolute. *United States v. Van Horn*, 789 F.2d 1492, 1507–08 (11th Cir. 1986); *JTR Enters., LLC v. Unknown Qty. of Colombian Emeralds*, 297 F.R.D. 522, 529 (S.D. Fla. 2013).

The substantive law governing the law enforcement privilege imposes threshold requirements before the privilege may be invoked. The privilege must be asserted by "the department having control over the documents at issue," *JTR Enters., 297 F.R.D. at 529, and the party asserting it bears the burden of demonstrating that the disputed materials actually contain information protected by the privilege. *Kahn v. United States*, 2015 U.S. Dist. LEXIS 75191, at *4-7 (S.D. Fla. June 10, 2015); *see also In re Sealed Case,* 856 F.2d 268, 271 (D.C. Cir. 1988)

(identifying the three threshold requirements for invoking the investigative privilege).

The administrative record does not contain sufficient factual evidence to meet that burden. There is no declaration or affidavit from any official who personally reviewed the responsive materials, no identification of the documents withheld, and no explanation of why any particular information is privileged. Instead, the administrative record produced to Plaintiffs consists of a three-page letter signed by the Department's litigation counsel that simply recites the asserted privileges. (Doc. 98-2). Nor does the record establish that any responsive documents actually contain privileged information. Indeed, the Department has declined even to confirm whether responsive records exist. (Doc. 106 at 1) (taking no position on the relevance of the requested documents "to the extent any exist").

Even if the privilege had been properly invoked, it remains qualified. The Eleventh Circuit has held that "[t]he privilege will give way" upon a showing of "need for the information." *Van Horn*, 789 F.2d at 1507-08. It further emphasized that determining whether such a need exists requires a "case-by-case balancing process." *Id.* at 1508. Courts within this Circuit conduct that inquiry through the ten-factor balancing framework first articulated in *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973); *see also Sirmans v. City of South Miami*, 86 F.R.D. 492, 495 (S.D. Fla. 1980) (adopting the *Frankenhauser* factors); *Hickey v. Columbus Consol.*

*Gov't*, No. 4:07-CV-096 (CDL), 2008 U.S. Dist. LEXIS 11599, at \*14-17 (M.D. Ga. Feb. 15, 2008) (applying those factors to a Department of Justice Touhy denial); *Kahn*, 2015 U.S. Dist. LEXIS 75191, at \*4-7 (applying the *Frankenhauser* factors ).

The *Frankenhauser* framework requires courts to weigh the government's confidentiality interests against the requesting party's demonstrated need by considering case-specific factors, including the nature of the requested information, the status of the investigation, the availability of the information from other sources, and the importance of the information to the requesting party's case. *Kahn*, 2015 U.S. Dist. LEXIS 75191, at \*4-10 (applying the *Frankenhauser* factors and determining that the privilege gives way to plaintiff's need for the information).

Neither the Department nor the Magistrate Judge identified or applied that balancing framework. The denial letter says nothing about Plaintiffs' need, the Eleventh Circuit's remand, this Court's discovery order, the absence of any alternative source for the information, why any investigation remains ongoing after the passage of more than six years, Al-Shamrani's death, or the protective-order procedures Plaintiffs offered. The Order likewise does not weigh those considerations against the government's confidentiality interests before sustaining the privilege. Because the law enforcement privilege is qualified rather than absolute, the Order's failure to conduct the required balancing analysis was contrary

14

to law. *See In re Sealed Case*, 856 F.2d at 271 (remanding for failure to apply the balancing test).

The Department's reliance on § 16.26(b)(5) to invoke the investigative privilege fails for the same reason. That regulation does not create a separate privilege. As footnote two correctly recognizes, it incorporates the same substantive law discussed above. (Doc. 120, at 10 n.2). The denial letter merely recites the regulation and states that "the investigation is ongoing." It identifies no enforcement proceeding, no investigative technique, and no explanation of how disclosure of the requested materials would interfere with any proceeding or impair any investigative technique. (Doc. 98-2 at 2–3). The Magistrate Judge's contrary findings depend entirely on the ex parte presentation challenged in Objection I.

## B.    Grand jury secrecy.

Rule 6(e) protects "matters occurring before the grand jury," including information that "may tend to reveal what transpired before the grand jury." Fed. R. Crim. P. 6(e); *In re Grand Jury Investigation*, 610 F.2d 202, 216 (5th Cir. 1980). But the rule does not shield documents "created independently of the grand jury process merely because they were subpoenaed or reviewed by a grand jury." *United States v. Dynavac, Inc.*, 6 F.3d 1407, 1411–14 (9th Cir. 1993); *Phillips v. United States*, 843 F.2d 438, 441(11th Cir. 1988); *In re: Grand Jury Investigation of Ven-Fuel, Inc.*, 510 F. Supp. 1047, 1050-52 (M.D. Fla. 1981). Plaintiffs seek independently

existing factual materials, including the contents of Al-Shamrani's devices, the contents of Al-Shamrani's social-media accounts, records supplied by Saudi Arabia, and Al-Shamrani's screening and vetting records. None of these documents were created by, for, or before a grand jury.

The Order sustained the § 16.26(b)(1) ground on the reasoning that Plaintiffs seek "the very type of information that the grand jury received as part of its investigation." (Doc. 120 at 12). That reasoning improperly equates grand jury exposure with protection under Rule 6(e). The Order's citations do not support its reasoning. Footnote 4 (*United States v. Aisenberg*, 358 F.3d 1327, 1348 (11th Cir. 2004)) addresses the duration of secrecy, not the scope of protected matter. Footnote 5 (*Aisenberg*, 358 F.3d at 1351) addresses public disclosure "through other means"; it says nothing about disclosures by the investigating agency itself. *See infra* Objection III.

### C.   Classified information.

The determination that information is classified belongs to the Executive Branch, and Plaintiffs have never asked this Court to review a classification decision; the Order's reliance on *United States v. Collins*, 720 F.2d 1195, 1198 n.2 (11th Cir. 1983), and *United States v. Moussaoui*, 65 F. App'x 881, 887 n.5 (4th Cir. 2003), answers a question not presented. (Doc. 120 at 12). The question presented is

whether classification status, standing alone, exempts material from civil discovery. It does not.

When the Government seeks to withhold classified information in civil litigation, the recognized substantive privilege is the state secrets privilege. That privilege "is not to be lightly invoked" and requires "a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Reynolds*, 345 U.S. at 7-8. No such claim exists here. (Doc. 98-2 at 3). Nor did the agency represent that all responsive material is classified, describe any effort to segregate unclassified material, or make any effort to distinguish factual evidence from the sources and methods by which those facts were obtained. Rather the record affirmatively establishes that unclassified responsive information exists. *See infra* Objection III. By treating § 16.26(b)(3) as an independent basis for withholding documents, the Order effectively transformed the Department's housekeeping regulation into a substantive privilege. Footnote two expressly disclaims that interpretation, and *Capitol Fish* forbids it.

**OBJECTION III: The Blanket Denial Ignored Unrebutted Evidence Establishing the Existence of Segregable, Non-Privileged Responsive Information.**

The Order never mentions the Crowder Declaration. (Doc. 102-2). That omission is significant, because the Crowder Declaration directly refutes the categorical premise of the Department's denial.

17

Randy Crowder, a career investigator with twenty-four years of experience, attests from personal observation that on November 9, 2022, at the "SWAT Roundup" in Orlando (an event hosted by the Florida Chapter of the FBI National Academy Associates) a presentation concerning this very investigation was given by a Special Agent from the FBI's Pensacola office. (Doc. 102-2 ¶¶ 1–5). The presentation ran approximately ninety minutes before eighty to one hundred active and retired law enforcement officers and support personnel, and the agent stated that the presentation had been given one or more times previously. (*Id*. ¶¶ 4, 6–7). During the presentation, the agent displayed materials from the FBI's investigative files including slides, surveillance video from Building 633, images of the shooter's recovered phones, and the contents of the notes he kept as a diary of his plans. (*Id*. ¶¶ 9–10, 14–15). The agent also described the Bureau's forensic techniques, including the single destructive method used to access the phones, its historical success rate, and its approval by the FBI Director and the Attorney General. (*Id*. ¶¶ 11–13). He further described the shooter's 2015 radicalization, his plans to enter the United States, his AQAP handler relationship, the review of other Saudi trainees' phones containing extremist content, and the vetting procedures in place when he was selected for training (*Id*. ¶¶ 14, 16). Moreover, "[a]t no time" did the agent indicate "that anything he discussed or displayed at the presentation was classified,

18

a state secret, or a matter of national security." (*Id*. ¶ 18). **These subjects directly correspond to Plaintiffs'** ***Touhy*** **Requests One, Two, and Four.**

The Department submitted no counter-declaration from the presenter, the Pensacola office, or anyone else. And the Department's suggestion that Plaintiffs simply "subpoena FBINAA for the presentation" (Doc. 106 at 10) concedes both the presentation's existence and its discoverability, even as the Department maintains that the same subject matter is categorically privileged, secret, and classified.

If the Bureau was able to assemble ninety minutes of slides, surveillance video, forensic methodology, investigative findings, and images for a presentation, then the record necessarily establishes that responsive, non-protected information exists. Once that fact is established, the Department cannot lawfully adhere to an all-or-nothing denial. It is required to determine what information can be disclosed through redaction, partial production, or an appropriate protective order.

Federal discovery rejects categorical assertions of privilege. Fed. R. Civ. P. 45(e)(2)(A) requires privilege claims to be asserted and described with sufficient specificity to permit evaluation, and the Eleventh Circuit requires privileges to be established on a document-by-document basis rather than through blanket assertions. Fed. R. Civ. P. 45(e)(2)(A), 26(b)(5); *In re Grand Jury Subpoena*, 831 F.2d 225, 227 (11th Cir. 1987); *In re Renco Group*, 164 F.4th 1336, 1344 (11th Cir. 2025). These principles necessarily require consideration of whether non-privileged

19

information may be produced through redaction or partial disclosure rather than withheld categorically. FOIA's express segregability requirement reflects the same underlying principle, that the government may not withhold an entire record when non-protected information can reasonably be separated. *See PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 252 (D.C. Cir. 1993).

In this case, the Magistrate Judge erred by upholding the Department's blanket denial without finding that responsive, non-protected information could not reasonably be segregated and produced.

The Department likewise ignored its own Attorney General Guidelines for Victim and Witness Assistance, which recognize a strong presumption in favor of providing information to crime victims. See Attorney General Guidelines for Victim and Witness Assistance (2022 ed.) at 1-4. Neither the denial letter nor the Order addresses those Guidelines or weighs the rights of the victims to obtain the necessary information and pursue their civil cases.

The Crowder Declaration therefore does more than establish waiver as to particular disclosures. It demonstrates that the all-or-nothing premise on which the entire denial rests is false. An agency that categorically refuses all production after the record establishes that non-protected responsive information exists, and an order that sustains that refusal without addressing the evidence, have "entirely failed to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43; *see*

20

*Regents*, 591 U.S. at 16. The denial, and the Order's acceptance of it, are arbitrary, capricious, and contrary to law. 5 U.S.C. § 706(2)(A).

**OBJECTION IV: The Ex Parte Procedure Denied Plaintiffs a Meaningful Opportunity to Be Heard, and Alternative Relief Is Warranted.**

Independent of the APA, Plaintiffs also object to the procedure by which the dispositive record was created. The Magistrate Judge conducted a closed evidentiary proceeding that Plaintiffs could not attend, considered evidence Plaintiffs have never seen, made no findings identifying what evidence was reviewed, and provided no transcript, summary, or other means by which Plaintiffs could meaningfully respond. Nothing in the Order setting the hearing indicated that the proceeding would supply the dispositive evidentiary basis for the Court's ruling. These Rule 72 objections therefore represent Plaintiffs' first meaningful opportunity to challenge the procedure as actually employed.

Alternatively, if the Court does not set aside the Order, Plaintiffs respectfully request the following relief:

(1) That the sealed transcript of the in camera hearing be filed under seal, made part of the record of this case, and designated for transmission under seal as part of the record on appeal;

(2) That Plaintiffs be provided an unclassified or redacted summary of the evidence presented or, at minimum, that the Court issue particularized

21

findings identifying, with respect to each *Touhy* request, the specific ground or grounds found to justify withholding;

(3) That the United States be ordered to produce a privilege log and to conduct and describe a segregability review; and

(4) That non-privileged factual materials be produced subject to an appropriate protective order or other conditions the Court deems appropriate.

**OBJECTION V (Preserved): Federal Rule of Civil Procedure 45 and Federal Common Law, Not the APA, Supply the Governing Framework.**

Plaintiffs recognize that *Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194 (11th Cir. 1991), and the unpublished decision in *Westchester General Hospital, Inc. v. Department of Health & Human Services*, 443 F. App'x 407 (11th Cir. 2011), have been applied in this Circuit to review *Touhy* determinations under the APA, and that the Order followed that approach. Plaintiffs present this objection solely to preserve the issue for appellate review.

Plaintiffs maintain that when a federal court issues a Rule 45 subpoena to a federal agency, the agency's obligation to comply is governed by Rule 45 and the substantive federal law of privilege, rather than by deferential review of the agency's internal decision-making under the APA. The Housekeeping Statute "does not authorize withholding information from the public or limiting the availability of records to the public," 5 U.S.C. § 301; *Touhy* held only that a subordinate employee

22

could not be held in contempt for complying with agency regulations, 340 U.S. 462, 467–68 (1951); the former Fifth Circuit held that the statute neither creates evidentiary privileges nor authorizes the Executive Branch to determine their existence, *Capitol Fish*, 294 F.2d at 874-75; and other circuits apply Rule 45 directly. *See, e.g., Watts v. SEC,* 482 F.3d 501, 506-10 (D.C. Cir. 2007).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court set aside the Magistrate Judge's Order (Doc. 120) and deny the United States' motion to quash (Doc. 98); alternatively, that the Court modify the Order and grant the relief specified in Objection IV.

Dated: July 29, 2026.                          Respectfully submitted,

*/s/ Matthew S. Mokwa*
Matthew S. Mokwa, Esq. (FL #47761)
**THE MAHER LAW FIRM, P.A.**
398 W. Morse Blvd., Suite 200
Winter Park, Florida 32789
Phone: (407) 839-0866
Fax: (407) 425-7958
mmokwa@maherlawfirm.com

Filed on Behalf of All Plaintiffs

## LOCAL RULE 7.1(F) CERTIFICATION

I certify that this paper contains 4,843 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(F).

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2026, and in compliance with L.R. 5.1(F), I, Matthew S. Mokwa, electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, which sends notice to all parties or counsel of record that have entered appearances in this action.

/s/ Matthew S. Mokwa
Matthew S. Mokwa, Esq.