# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

| | | |
|---|---|---|
| BENJAMIN WATSON, JR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. |
| | ) | 3:21-cv-00329-MCR-ZCB |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| KINGDOM OF SAUDI ARABIA | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFFS' REPLY BRIEF

Pursuant to the Court's Order dated July 31, 2026 (Doc. 125), Plaintiffs respectfully submit this Reply in support of their Motion to Compel.

Plaintiffs issued Rule 45 subpoenas and accompanying *Touhy* requests to the Federal Bureau of Investigation ("FBI"), Department of the Navy ("Navy"), and Department of State ("DOS") in late March 2026. For approximately four months, none of the agencies produced documents, served written objections, requested an extension, or issued a *Touhy* determination.

After Plaintiffs filed the Motion, the Navy completed its review and produced responsive documents. The FBI issued a letter requesting additional information and stating that upon receipt it would make a *Touhy* determination. DOS still has not

1

issued any formal response or determination. Accordingly, the Motion is moot as to the Navy but remains necessary as to the FBI and DOS.

The absence of a fixed internal deadline for completing *Touhy* review does not authorize an agency to disregard a subpoena's compliance date. If the Government believed additional time was warranted because of the scope or sensitivity of the requests, it should have sought that relief from the Court. Indeed, both the DOJ's and DOS's *Touhy* regulations expressly recognize that circumstance and direct agency counsel to seek relief from the Court.

The DOJ regulations provide that when a Department decision has not been made before a response is required, the responsible official must advise the court that the demand is receiving prompt consideration and request a stay pending the Department's decision. 28 C.F.R. § 16.27. Likewise, the DOS regulations require Department counsel, when a response is required before the Department has rendered a decision, to advise the court that the demand is under consideration and request a stay pending the Department's decision. 22 C.F.R. § 172.6(a)(4). Neither the FBI nor the DOS followed those procedures.

*Touhy* regulations govern agency decision-making, but they **do not authorize** agencies to suspend compliance with federal subpoenas without seeking judicial relief.

2

The Eleventh Circuit remanded this action for development of the jurisdictional facts, and this Court authorized expedited jurisdictional discovery expressly recognizing that much of the relevant evidence resides in the possession or control of the Kingdom of Saudi Arabia ("KSA") and various federal agencies. The Government's position would invert that framework by allowing each subpoenaed agency to determine the pace of discovery in this case.

## I.      The Motion is Not Moot as to the FBI

The Government's mootness argument cannot be reconciled with its own description of the FBI's review. It argues that the Motion is moot because the FBI has "responded" (Doc. 124 at 1), yet simultaneously argues that the FBI's *Touhy* review remains "ongoing" and has not been "administratively exhausted" (Doc. 124 at 5). Those positions cannot both be correct.

The FBI's July 28, 2026 letter says the same thing. Rather than issuing a *Touhy* determination, it concludes:

> Should you address the concerns raised in this letter and provide this office with the required information, we will review it in light of the relevant federal regulations and make a determination as to the propriety of the requested release of information.

(Doc. 124-3 at 4). The letter also reserves the right to assert additional privileges and objections. *Id*. By its own terms, the FBI has not yet issued the determination that Plaintiffs' Motion seeks. Plaintiffs requested an order requiring the agencies to issue

3

*Touhy* determinations, not merely to acknowledge receipt of the requests or invite further submissions. Because the Court can still order the FBI to issue that determination, the Motion is not moot.

Moreover, the FBI's stated reasons for not issuing a determination are unsupported. If the Bureau believed Plaintiffs' *Touhy* request lacked sufficient information under § 16.22(d), it could have communicated that concern at any point during the four months following service. Instead, it spent weeks identifying responsive documents, conducting paragraph-by-paragraph classification review, and coordinating with multiple FBI components before asserting for the first time that the request supposedly could not be processed. That chronology is difficult to reconcile with the FBI's present position that the request was too deficient to evaluate.

According to representations from the Government, the FBI spent June actively processing these very requests. On June 9, it "anticipate[d] another week or so to complete the identification of responsive documents," with identified documents to "be reviewed by counsel and management within the FBI." On June 18, the USAO reported, "I just talked to the FBI. They are still collecting relevant documents, with several documents going through paragraph-by-paragraph classification review," in consultation with FBI's Office of General Counsel "and other field offices." (Doc. 124-1). It is difficult to understand why the FBI underwent

4

a paragraph-by-paragraph classification review of documents responsive to a request it deems too defective to process. Yet the FBI's July 28 letter asserts that processing cannot proceed until Plaintiffs cure threshold defects of relevance and the Privacy Act. (Doc. 124-3 at 3–5).

Likewise, the Privacy Act concern had previously been raised and discussed by the parties. It was the USAO that raised the Privacy Act and proposed the solution: "it's probably a good time to start considering a protective order" (June 18); "[i]t would be nice to get a privacy act protective order in place so that info can be disclosed" (July 8). (Doc. 124-1). Plaintiffs promptly provided a proposed order, which the USAO reviewed: "I like the privacy act section, but Sections 3.2 and 16 could be problematic in requiring a privilege-log." (*Id*). The FBI's demand for "a court order, a waiver, or some other basis" (Doc. 124-3 at 3) thus asks for what has been sitting with the Government for weeks.

Moreover, the Privacy Act does not protect Al-Shamrani's information. The act defines an "individual" as "a citizen of the United States or an alien lawfully admitted for permanent residence," 5 U.S.C. § 552a(a)(2). Al-Shamrani was neither.

Plaintiffs remain willing to work cooperatively with the FBI to address its stated concerns. But that process must take into account the expedited jurisdictional-discovery schedule established by the Court and cannot remain open-ended.

Plaintiffs therefore respectfully request that the Court reject the Government's mootness argument. If the Government contends that the July 28 letter constitutes the FBI's final *Touhy* determination, it should be required to state that position unequivocally. If it is not, the Court should require the FBI to complete its review and issue a final written determination by a date certain. Plaintiffs do not ask the Court at this stage to compel production of any particular document or rule on any specific objections raised by the FBI.

## II. The Government's Service Objection Does Not Preclude Relief as to the FBI

Plaintiffs delivered the subpoena and accompanying *Touhy* request by hand and certified mail to the United States Attorney's Office for the Northern District of Florida. The transmittal identified the FBI as the Department of Justice component from which records were sought, enclosed the Rule 45 subpoena, and provided the information necessary to process the demand.

The Government contends that Plaintiffs were also required to serve the FBI separately, but the regulation it cites does not impose that requirement. Section 16.22(b) provides that, when a demand is made upon a Department employee, "the employee shall immediately notify the U.S. Attorney for the district where the issuing authority is located," and that the responsible U.S. Attorney shall then follow the procedures prescribed by § 16.24. 28 C.F.R. § 16.22(b). Section 16.24, in turn,

6

requires the responsible official to notify and consult with the DOJ component responsible for the demanded records—here, the FBI. 28 C.F.R. § 16.24(a). The cited provisions thus establish an internal Department routing process; they do not identify any FBI office or official whom the requesting party must separately serve.

That internal process occurred here. The United States Attorney's Office communicated with the FBI concerning the demand and reported that the FBI had identified responsive documents, submitted them for review by counsel and management, conducted paragraph-by-paragraph classification review, consulted its Office of General Counsel, and coordinated with other field offices. (Doc. 124-1 at 1-2.) The FBI thereafter issued a five-page response through its Office of General Counsel. The alleged service defect therefore did not prevent the demand from reaching the responsible officials or from undergoing substantive review.

If the Court concludes that separate service on the FBI was required under Rule 45, Plaintiffs eliminated any service issue by re-serving the subpoena on August 7, 2026, through litigation counsel for the FBI, who agreed to accept service on the FBI's behalf.

### III.    The Government's Exhaustion Theory Fails

The Government's administrative exhaustion argument conflates two distinct forms of APA review. Plaintiffs are not asking the Court to review the **merits** of an uncompleted agency decision. They seek an order requiring the FBI and DOS to

complete their review and issue the decisions in the first place. Section 706(1) expressly authorizes a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). This Court recognized precisely that distinction in the Government's principal case:

> A federal agency cannot escape judicial review by endlessly delaying responding to a federal litigant's Touhy request. A reviewing court presented with a complaint of agency inaction—as opposed to final agency action—may "compel agency action unlawfully withheld or unreasonably delayed."

*In re 3M Combat Arms Earplug Products Liability Litigation*, 2021 U.S. Dist. LEXIS 10427, at *13 (N.D. Fla. Jan. 4, 2021). That is exactly the claim presented here. As *Norton v. Southern Utah Wilderness Alliance* explains, § 706(1) permits a court to compel an agency "to take action upon a matter, without directing how it shall act." 542 U.S. 55, 64–65 (2004). That is precisely the relief Plaintiffs seek.

Nor does *3M* support the Government's request to deny relief on the present record. In *3M*, the court found the delay reasonable only after the agency supplied a sworn declaration and a detailed, request-specific explanation of the searches performed, the limitations of the relevant databases, the burden of producing or creating the requested information, and the applicable privacy concerns. *Id.* at *16– 21. The Government has offered no comparable evidentiary showing here. DOS has provided no declaration, no processing schedule, no anticipated completion date, and

8

no explanation why requests reportedly nearing completion in June still had not been completed.

The action Plaintiffs seek is discrete and legally required. The APA provides that, "within a reasonable time, each agency **shall** proceed to conclude a matter presented to it." 5 U.S.C. § 555(b) (emphasis added). The applicable *Touhy* regulations likewise contemplate that the agencies will complete their review and communicate a decision concerning compliance with the demand. Plaintiffs seek only those discrete actions: completion of the agencies' reviews and issuance of final determinations. Rule 45 supplies the relevant deadlines. Fed. R. Civ. P. 45(d).

The Government's remaining authorities do not support a different result. *Woodford v. Ngo* interpreted the Prison Litigation Reform Act's express statutory exhaustion requirement and held that a prisoner must properly complete the administrative grievance procedures before seeking judicial relief. 548 U.S. 81, 85, 90–91 (2006). It did not involve a claim under § 706(1) seeking to compel an agency to conclude a matter that remained pending before it.

*In re Scully,* 2006 U.S. Dist. LEXIS 38780, at *1–2 (D.D.C. Apr. 11, 2006), involved a party that sought to compel testimony from a former HHS official yet failed to comply with the agency's *Touhy* process. By contrast, the Government identifies no defect in Plaintiffs' DOS *Touhy* request and no additional administrative step Plaintiffs must take.

9

*SEPTA v. Orrstown Fin. Servs.*, 367 F. Supp. 3d 267 (M.D. Pa. 2019), is likewise distinguishable. *SEPTA* involved a request for substantive production before the responsible regulator had determined whether to assert or waive a privilege. (Doc. 124 at 5–6). The court held that such substantive relief was premature because the requester had not completed the agency's prescribed process necessary for that determination. *Id*. at 280–86. Thus, *SEPTA* addresses judicial review of the substance of an unresolved agency decision; it does not hold that a court lacks authority under § 706(1) to require an agency to complete its review and issue a decision in the first place.

The Government's contrary position would create an obvious gap in APA review. The Government argues that the *Touhy* regulations impose no deadline for agency action (Doc. 124 at 8), yet insists judicial review is unavailable until a final determination issues. Under that theory, an agency could avoid Rule 45 indefinitely simply by never acting. Section 706(1) exists to address that precise circumstance. The absence of a final decision may make review of the eventual decision premature under § 706(2); it does not make a claim seeking completion of the decision premature under § 706(1).

10

**IV.    The Department of State's Delay is Unreasonable Under the TRAC Factors**

The *TRAC* analysis does not begin from a deadline-free baseline. The Rule 45 subpoena supplied the compliance date and Rule 45 required any written objections to be served before the earlier of that date or fourteen days after service. Fed. R. Civ. P. 45(d)(2)(B). Absent an agreed extension or timely request for judicial relief staying or modifying the subpoenas, those deadlines remained operative. The DOS's internal *Touhy* review did not itself suspend them or replace them with an open-ended administrative timetable. The question under *TRAC*, therefore, is whether the agency has shown that its continued failure to act after the Rule 45 deadlines was reasonable under the circumstances.

**A. Factors One and Two: Rule of Reason**

In *3M*, the Court's finding of reasonable delay rested on a developed evidentiary record. The Department of Defense submitted a sworn declaration and provided request-specific explanations concerning the searches performed, the capabilities and limitations of the relevant databases, the burden of assembling particular information, the absence of certain requested data, and the privacy and sensitivity concerns involved. 2021 U.S. Dist. LEXIS 10427, at *16–23. As the Court stated, that "more copious explanation ... makes all the difference." *Id.* at *16 (quoting 2020 WL 6787216, at *6).

The Government has made no comparable showing here. Its Response states that DOS is conducting keyword searches of a central archive containing correspondence, diplomatic notes, cables, state.gov emails, and certain retired electronic records. (Doc. 124 at 7-8). But DOS has submitted no declaration identifying when those searches began, their scope, the volume of material under review, the components involved, any completed processing milestones, or an anticipated completion date.

The Government's own contemporaneous update further underscores the absence of a coherent timetable. On June 9, the USAO reported that "it sounds like" DOS had completed its "review/response" of Requests 1 and 3 and was in the process of examining Request 2. (Doc. 124-1 at 1). Yet nearly two months later, DOS still had not issued a formal response, determination, or estimated completion date. The Government does not reconcile those representations or explain what work remains on Requests 1 and 3, or why partial production cannot occur.

**B. Factor Three: Human Health and Welfare**

The Government asserts that "human health and welfare are not at stake." (Doc. 124 at 10). That characterization treats the procedural posture as though it defines the interests affected by the delay. Although this is not a proceeding involving immediate medical treatment or public benefits, neither is it ordinary litigation.

This case was brought by the survivors and families of American service members murdered in a terrorist attack under a statute Congress enacted to provide victims of international terrorism a judicial remedy. The discovery at issue will determine whether those victims ever have an opportunity to be heard on the merits.

## C. Factor Four: Competing priorities

The Government identifies no particular competing agency activity that would be displaced by an order requiring DOS to complete its review by a reasonable date. Its general observation that DOS possesses authority over visas does not identify an actual competing demand, explain how agency resources have been allocated, or show that a definite completion schedule would impair a higher priority. The agency is uniquely positioned to supply that information, yet it failed to submit a declaration or any other evidence addressing it.

## D. Factor Five: Prejudice

The Government's response to prejudice is one sentence: the discovery deadline "has been stayed." (Doc. 124 at 10). That description is incomplete. The stay applies to discovery directed toward Defendant KSA while expressly permitting third-party discovery to proceed. (Doc. 93, 97). Treating agency nonresponse as inconsequential because discovery against KSA is stayed would nullify the third-party-discovery carveout.

The Court directed Plaintiffs to complete jurisdictional discovery within a defined period, while DOS claims no corresponding deadline to respond to the demands necessary to conduct that discovery. Court-authorized discovery cannot function as intended if the requesting party remains subject to judicial deadlines while the agencies possessing much of the evidence operate without any schedule or endpoint.

### E. Factor Six: Impropriety

The sixth factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Telecommunications Research & Action Center v. FCC ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984). The Government argues the factor "weighs in favor of the DOS because ... there has been no factual allegations that the DOS has acted in bad faith." (Doc. 124 at 11). That reading inverts the factor. Its function is to make bad faith unnecessary, not to make its absence a defense.

Taken together, the *TRAC* factors support narrowly tailored relief. Plaintiffs do not ask the Court to dictate DOS's substantive decision or compel production of any particular document at this stage. They ask only that DOS be required to complete its review and issue a written determination by a date certain.

14

## V.    Conclusion

Plaintiffs respectfully request that the Court: (1) deem the Motion moot as to the Navy; (2) require the FBI to state whether its July 28, 2026 letter constitutes its final Touhy determination and, if not, to complete its review and issue a final written determination by a date certain; and (3) require the State Department to complete its review and issue a final written determination by a date certain. This relief would compel the agencies to act without directing the substance of either agency's decision.

Respectfully submitted,

*/s/ Matthew S. Mokwa*
Matthew S. Mokwa, Esq. (FL#47761)
**THE MAHER LAW FIRM, P.A.**
398 W. Morse Blvd., Suite 200
Winter Park, Florida 32789
Phone: (407) 839-0866
Fax: (407) 425-7958
mmokwa@maherlawfirm.com

On Behalf of All Plaintiffs

## LOCAL RULE 7.1(F) CERTIFICATION

I hereby certify that, pursuant to Local Rule 7.1(F) and the Court's Order dated July 31, 2026 (Doc. 125) the foregoing Reply contains 3,038 words excluding the case style, signature block, and certificate of service.

## LOCAL RULE 5.1(F) CERTIFICATION

I hereby certify that on August 7, 2026 and in compliance with L.R. 5.1(F), I, Matthew S. Mokwa, electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system which sends notice to all parties or counsel of record that have entered appearances in this action.

*/s/ Matthew S. Mokwa*
Matthew S. Mokwa, Esq.

16